Maria TOVAR, Petitioner,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Respondent.

No. 79–1086.

United States Court of Appeals, Third Circuit.

Argued Sept. 6, 1979.

Decided Jan. 14, 1980.

Eric J. Bal, Union, N. J. (argued), for petitioner.

Chester J. Halicki, Washington, D. C. (argued), Robert S. Forster, Jr., Asst. U. S. Atty., Philadelphia, Pa., Philip Wilens, James P. Morris, Washington, D. C., for respondent.

Before ADAMS, HUNTER and HIGGIN-BOTHAM, Circuit Judges.

OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

1. Maria Tovar petitions this court to review a decision of a special inquiry officer of the Immigration and Naturalization Service, made pursuant to 8 U.S.C. § 1254(a) (1976),[1] which was approved by the Board of Immigration Appeals in dismissing Tovar's appeal. The Immigration and Naturalization Service denied her application for suspension of deportation because she failed to establish the statutory prerequisite of extreme hardship. This petition presents two issues for review. The first is a question of statutory construction: whether the Immigration and Naturalization Service was correct as a matter of law in determining that the hardship to the grandchild was irrelevant to the extreme hardship inquiry conducted under the deportation suspension provision. 8 U.S.C. § 1254(a)(1) (1976). The second issue for review is whether the administrative record supports the factual finding of the Board of Immigration Appeals when it hypothetically addressed the issue of the hardship resulting to the grandchild and found that his adjustment would probably not be severe. Courts of Appeals have jurisdiction to review final deportation orders against aliens within the United States. 8 U.S.C. § 1105a(a) (1976). The denial of an application to suspend deportation, when made in the course of a hearing conducted pursuant to 8 U.S.C. § 1252(b) (1976), is a final order of deportation within the meaning of the Immigration and Naturalization Act and therefore this court has the power to review the Board's decision. *Cheng Fan Kwok v. Immigration and Naturalization Service,* 392 U.S. 206, 88 S.Ct. 1970, 20 L.Ed.2d 1037 (1968); *Foti v. Immigration and Naturalization Service,* 375 U.S. 217, 220, 84 S.Ct. 306, 11 L.Ed.2d 281 (1963).

I

3. The petitioner is a native and citizen of Colombia, who last entered the United States on October 17, 1970. She overstayed the time period specified in her visa. Tovar lives with a grandchild, Christian, who is the illegitimate son of Tovar's daughter. Subsequent to this child's birth, Tovar's daughter married a man who was not Christian's father. Although that marriage produced two additional offspring, Christian was excluded from participating as a family member of that household. Tovar assumed the role of a surrogate mother and raised her grandchild from infancy as her own child. Christian, five years old at the time of the deportation hearing, still lives with Maria Tovar.

4. Maria Tovar concedes deportability. In accordance with 8 U.S.C. § 1254(a)(1) she has applied for a suspension of deportation and an adjustment of her status to that of an alien lawfully admitted for permanent residence. This relief is discretionary and an alien applying for such relief bears the burden of establishing the statutory prerequisites. *Pelaez v. Immigration and Naturalization Service,* 513 F.2d 303, 305 (5th Cir.), *cert. denied,* 423 U.S. 892, 96 S.Ct. 190, 36 L.Ed.2d 124 (1975). To be eligible for a suspension of deportation, an alien must show that he meets three requirements: (1) continuous physical presence within the United States for at least seven years immediately preceding the date of application for suspension of deportation, (2) good moral character throughout that period, (3) extreme hardship which would result from deportation of the alien. There is no dispute that Tovar meets the physical presence and good moral character requirements. As to the final statutory requirement, however, the Immigration and Naturalization Service found that Tovar's depor-

---

1. 8 U.S.C. § 1254(a)(1) provides that "the Attorney General may, in his discretion, suspend deportation and adjust the status to that of an alien lawfully admitted for permanent residence." The alien must apply for suspension of deportation and be a person who

"has been physically present in the United States for a continuous period of not less than seven years immediately preceding the

date of such application, and proves that during all of such period he was and is a person of good moral character; and is a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship to the alien or to his spouse, parent or child, who is a citizen of the United States . . . ."

tation would not constitute extreme hardship within the contemplation of the statute and that any hardship resulting to her grandchild was not pertinent to the extreme hardship inquiry. 8 U.S.C. § 1254(a)(1) (1976). Therefore, she was deemed ineligible for the discretionary exercise of a stay of deportation.

■■ 5. In reviewing an agency order, a court of appeals is limited to consideration of the administrative record upon which the deportation order is based. 8 U.S.C. § 1105a(a)(4) (1976); *Vassiliou v. District Director of Immigration and Naturalization Service*, 461 F.2d 1193, 1195 (10th Cir. 1972). The agency's findings of fact, "if supported by reasonable, substantial, and probative evidence on the record considered as a whole" are conclusive. 8 U.S.C. § 1105a(a)(4) (1976); *Bastidas v. Immigration and Naturalization Service*, 609 F.2d 101 at 104 (3d Cir.) (1979); *Wong Wing Hang v. Immigration and Naturalization Service*, 360 F.2d 715, 717 (2d Cir. 1966) (Friendly, J.). *See Foti v. Immigration and Naturalization Service, supra*, 375 U.S. at 228–29 & n.15, 84 S.Ct. 306. Federal courts, however, have plenary review of questions of law, including questions of statutory construction and interpretation. Sec. 10(e) of the Administrative Procedure Act; 5 U.S.C. § 706 (1976).

## II

### A. *Construction of the Statute*

6. To be eligible for suspension of deportation, an alien must show that his deportation would result in extreme hardship to himself, or to "his spouse, parent, or child, who is a citizen of the United States." 8 U.S.C. § 1254(a) (1976). The special inquiry officer assessed the hardship that would befall Tovar and determined that deportation would not result in extreme hardship to her.[2] He did not evaluate the hardship that Tovar's deportation would cause her

dependent grandchild. In its opinion dismissing Tovar's appeal, the Board of Immigration Appeals reached the issue of the grandchild's hardship and determined that it was not pertinent. The statute does not specifically denominate grandchildren among those family members whose hardship, if extreme, would permit suspension of an alien's deportation. Nevertheless, we conclude that on these facts, the Immigration and Naturalization Service erred in construing the statute to exclude consideration of the grandchild's hardship.

■ 7. We believe that the section of the Immigration Act setting forth the eligibility requirements for suspension of deportation should be read in light of Congressional purpose. *See Kamheangpatliyooth v. Immigration and Naturalization Service*, 597 F.2d 1253 (9th Cir. 1979). The language of the suspension provision evinces a legislative purpose to protect immediate members of an alien's family from the hardship attending her deportation. *See Pelaez v. Immigration and Naturalization Service*, 513 F.2d 303, 305 (5th Cir. 1975). To accomplish that goal, the statute permits the Immigration and Naturalization Service to suspend deportation of an illegal alien after evaluating the hardship that would result to a spouse, parent or child, if the resulting hardship would be extreme.

■ 8. Because Tovar's relationship to her grandchild so closely resembled that of parent to child, we hold that the hardship to this grandchild from deportation of Tovar should be considered in determining whether Tovar is eligible for a stay of deportation. *Cf. Vergel v. Immigration and Naturalization Service*, 536 F.2d 755, 757 (8th Cir. 1976). In *Vergel*, the court suggested that the hardship of a child who had been nursed by an alien about to be deported was pertinent to the extreme hardship determination. Although Christian is the grandchild and not the child[3] of Maria To-

---

2. Cert.Ad.Rec. at 11.

3. 8 U.S.C. § 1101(b)(1) defines the term "child" to include unmarried persons under the age of twenty-one. Legitimate children, stepchildren, illegitimate children and adopted children may all be treated as within the meaning of "child"

if various requirements are met. Common requirements include tender age, *see id.* at (b)(1)(B), (E), and that the child be within the custody of the parent(s), *see id.* at (b)(1)(C), (E). Christian in many ways fits the profile of what the statute describes as "child."

var, nevertheless the two comprise a family and in fact share the relationship of mother to child. Christian is emotionally attached and financially dependent on Maria Tovar. Testimony at the hearing indicated that he thought of her as his mother, despite his having been informed of the identity of his natural mother. Furthermore, we recognize that grandmother headed households are worthy of fundamental respect. *See Moore v. City of East Cleveland*, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1976).[4] Therefore we believe it proper to extend the same privilege that the suspension provision affords the nuclear family to this grandmother-headed family.

9. Accordingly, we will remand to the Immigration and Naturalization Service so it may determine whether Tovar's deportation would cause extreme hardship to her grandchild Christian. After the special inquiry officer has squarely faced the question of what degree of hardship the deportation of Tovar would pose for this grandchild, Tovar may then be eligible to have her deportation suspended, and the special inquiry officers[5] would be free to exercise his discretion.

## B. The Findings of the Board of Immigration Appeals

10. One issue requires further attention: the Board of Immigration Appeals' conclu-sion, after reviewing the record of the deportation hearing, that Christian's adjustment would not be severe. Our scope of review is limited to whether the Board's finding is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." 8 U.S.C. § 1105a(a); *Bastidas v. Immigration and Naturalization Service*, 609 F.2d 101, at 104 (3d Cir.) (1979).

■ 11. After rejecting the legal relevance of the grandchild's hardship, the Board summarily concluded that even "assuming arguendo that the effect of the respondent's deportation on this child could be considered, the testimony of his mother at the deportation [hearing] indicated that the adjustment probably would not be severe." Cert.Ad.Rec. at 5. Our review of the transcript of the deportation hearing leads us to conclude that the testimony[6] does not support the inference drawn by the Board. We are concerned that because the Board thought that the legal standard in determining extreme hardship excluded from consideration any hardship to the grandchild, less than full evaluation of Christian's hardship may have been undertaken. We think it appropriate for the Immigration and Naturalization Service to make a fresh determination with the knowl-

---

4. In *Moore v. City of East Cleveland*, the Supreme Court took the occasion to voice this country's reverence for all family units:

> Ours is by no means a tradition limited to respect for the bonds uniting the members of the nuclear family. The tradition of uncles, aunts, cousins *and especially grandparents* sharing a household along with parents and children has roots equally as venerable and equally deserving of constitutional recognition.

431 U.S. at 504, 97 S.Ct. at 1938 (emphasis supplied).

We believe that our construction of the statute to include a grandchild's hardship when the grandmother has acted *in loco parentis* is consistent with the underlying premise of *Moore*.

5. For a recital of the delegation of the statutory authority vested in the Attorney General pursuant to 8 U.S.C. § 1254(a), *see Bastidas v. Immigration and Naturalization Service*, 609 F.2d 101 at 103, n. 1 (3d Cir.) (1979).

6. The testimony of Tovar's daughter at her mother's deportation hearing concerning the hardship to Christian was limited and did not indicate with a measure of probability that Christian's adjustment would not be severe:

> Q: If you took Christian into your home, would *you* have any problems? (emphasis added).
> A: I think no.
> Q: Would your husband object to his being part of your family?
> A: Sir, I don't know. My child lives with my mother. If the child will be alone, maybe the husband will ask the child in our family. . . .
>
> Immigration Judge: She already stated that, from her previous testimony, apparently there is some sort of problem from what I gather between her husband and the mother and the reason the child is therefore staying with the mother and she says that she don't know maybe if her mother wasn't there, is what she said, the child, the husband may accept the child so I assume that there is some other kind of family problem. . . .

edge that the grandchild's hardship is legally relevant.

12. Accordingly, we will vacate the order denying suspension of deportation and remand this case to the Board of Immigration Appeals for further proceedings consistent with this opinion.

---

Q: If your mother were deported and Christian were placed in your home would Christian have emotional problems? . . .
A: I think yes, sir, because the child is very very attached to my mother. The child is living with my mother, very attached to her.

---

*Cert.Ad.Rec. at p. 27–28.*
This testimony does not support the Board's conclusion that the adjustment problems that Christian would face probably would not be severe.