**Mohammad Zafar TIPU, Petitioner,**

v.

**IMMIGRATION & NATURALIZATION SERVICE, Respondent.**

No. 92–3657.

United States Court of Appeals, Third Circuit.

Argued June 24, 1993.

Decided April 5, 1994.

---

**4.** *See supra* notes 1, 2.

Ann A. Ruben, Richard D. Steel (Argued), Steel & Rudnick, Philadelphia, PA, for petitioner.

Stuart M. Gerson, Asst. Atty. Gen., David J. Kline, Asst. Director David V. Bernal (Argued), Carl H. McIntyre, Jr., U.S. Dept. of Justice, Office of Immigration Litigation, Washington, DC, for respondent.

Before: BECKER, ALITO and ROTH, Circuit Judges.

## OPINION OF THE COURT

ROTH, Circuit Judge:

In 1982 Mohammad Tipu was convicted on narcotics charges. As a result, the Immigration and Naturalization Service ("INS") is now seeking to deport him. At his deportation hearing, Tipu introduced evidence in his favor of his rehabilitation and of his seriously ill brother's dependence upon him. Nevertheless, an immigration judge denied Tipu special equitable relief from deportation under § 212(c) of the Immigration and Naturalization Act ("INA"), 8 U.S.C. § 1182(c). The Board of Immigration Appeals ("BIA") affirmed the immigration judge's decision and ordered Tipu's deportation to Pakistan. Tipu appeals, challenging the BIA's decision as an abuse of discretion. As we conclude that the BIA failed to properly consider important factors in Tipu's favor, we will vacate the decision of the BIA and remand this case for further proceedings consistent with this opinion.

### I.

Mohammed Zafar Tipu is a native and citizen of Pakistan. On February 25, 1971, at age 22, he entered the United States on a student visa. He became a lawful permanent resident alien on August 8, 1972. He has resided here continuously for twenty-three years and has been steadily employed, as an auto mechanic, a partner in a restaurant venture, the operator of a magazine stand, and a taxi driver. He has been the owner/operator of a taxi cab in Virginia since 1983. Tax forms submitted to the court show that Tipu has paid taxes on his wages. App. at 29–36.

Since 1973, Tipu has lived with his brother, Mohammad Arshad. In 1977, Arshad suffered complete kidney failure. Two attempted kidney transplants failed, and Arshad has to undergo dialysis treatment three times weekly. As Arshad's condition has become increasingly serious, he has come to rely upon Tipu for transportation to his dialysis sessions and for emotional and financial support. Although Arshad receives government disability benefits, Tipu apparently provides substantial support for Arshad, his wife and their two children.

On January 22, 1982, Tipu pled guilty to a charge of conspiracy to distribute heroin. He was sentenced to one year imprisonment, of which he served ten months. Tipu alleges that his role in the conspiracy was very minor, consisting solely of attending a dinner meeting at which the conspiracy was discussed by his older brothers, who were the conspirators. Tipu received the lightest sentence of the conspirators. No evidence was introduced to show that Tipu was ever involved in the use or sale of drugs prior to or after this conviction.

As a result of Tipu's conviction, the INS began deportation proceedings against him pursuant to 8 U.S.C. § 1251(a)(11). In a June 4, 1986, hearing, Tipu conceded that he was deportable and applied for relief from deportation under the waiver of inadmissibility provision of § 212(c) of the INA. At his hearing, Tipu submitted positive letters of support from his minister, from his probation officer, and from several personal acquaintances. The letter from Tipu's probation officer attested to Tipu's trustworthiness and to his crucial role in supporting his brother. The probation officer stated that "the conspiracy offense was in point of fact an aberration for this man." App. at 38.

Following the deportation hearing, the immigration judge denied Tipu's application for a § 212(c) waiver and found Tipu deportable under 8 U.S.C. § 1251(a)(11) because of his conviction. Tipu appealed to the BIA on June 9, 1986. Six years later, on August 3, 1992, the BIA affirmed the immigration judge's denial of a § 212(c) waiver and dismissed Tipu's appeal. Tipu filed a timely petition for review and motion for stay of deportation with this Court. After a jurisdictional challenge to Tipu's appeal was resolved in his favor, a stay of deportation was granted on December 18, 1992, by a panel of this Court. This appeal followed.

## II.

This Court has jurisdiction to review a final deportation order by the BIA pursuant to 8 U.S.C. § 1105a(a)(1). The BIA's denial of a petition for a stay of deportation is reviewed under an abuse of discretion standard. *Foti v. INS*, 375 U.S. 217, 228 n. 15 (1963). Discretionary decisions of the BIA will not be disturbed unless they are found to be "arbitrary, irrational or contrary to law." *So Chun Chung v. INS*, 602 F.2d 608, 612 (3d Cir.1979); *Marroquin–Manriquez v. INS*, 699 F.2d 129, 133 (3d Cir.1983), *cert. denied*, 467 U.S. 1259, 104 S.Ct. 3553, 82 L.Ed.2d 855 (1984).

## III.

Section 212(c) requires the Attorney General or her designate as a matter of discretion to determine whether to grant a waiver once statutory eligibility is established. Tipu's statutory eligibility for a § 212(c) waiver is not disputed.[1]

Neither the language of the statute nor the relevant regulations establish criteria by which to weigh applications for discretionary relief from deportation. *See* 8 U.S.C.

---

1. Section 212(c) of the INA provides:
   Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and are not under an order of deportation and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to [various grounds for excludability found in 8 U.S.C. § 1182(a), including narcotics offenses].

8 U.S.C. § 1182(c). This section has been held to be applicable also to lawfully admitted resident aliens facing deportation who did not depart the United States prior to committing the acts that rendered them deportable. *Francis v. INS*, 532 F.2d 268 (2d Cir.1976); *Matter of Silva*, 16 I & N Dec. 26 (BIA 1976).

1182(c); 8 C.F.R. § 213.3 (1990). However, the BIA has adopted a test that has been applied in such cases in order to "balance the adverse factors evidencing an alien's undesirability as a permanent resident with the social and humane considerations presented in his behalf." *Matter of Marin*, 16 I & N Dec. 581, 584 (BIA 1978). The balancing test enunciated in *Marin* and applied by the BIA in this case is as follows:

> Favorable considerations have been found to include such factors as family ties within the United States, residence of long duration in this country (especially when the inception of residence occurred at a young age), evidence of hardship to the respondent and her family if deportation occurs, service in this country's armed forces, a history of employment, the existence of property or business ties, evidence of value and service to the community, proof of genuine rehabilitation if a criminal record exists, and other evidence attesting to a respondent's good character.

> Among the factors deemed adverse to an alien are the nature of underlying circumstances of the exclusion ground at issue, the presence of additional significant violations of this country's immigration laws, the existence of a criminal record, and, if so, its nature, recency, and seriousness, and the presence of other evidence indicative of a respondent's bad character or undesirability as a permanent resident of this country.

*Matter of Marin*, 16 I & N Dec. 581, 582–873 (BIA 1978). *See also Matter of Roberts*, Int. Dec. 314B (BIA May 1, 1991) *Matter of Edwards*, Int. Dec. 3134 (BIA May 2, 1990); *Matter of Buscemi*, 19 I & N Dec. 628 (BIA 1988).

█ The applicant bears the burden of demonstrating that he merits § 212(c) relief from deportation. *Matter of Marin*, 16 I & N Dec. 581, 582–83 (BIA 1978). BIA case law has also established that just one of the adverse considerations may be determinative of whether § 212(c) relief is granted and that an alien who has been convicted of a serious drug offense will usually be required to make a showing of unusual or outstanding equities

in their favor in order to be considered for § 212(c) relief. *Matter of Buscemi*, 19 I & N Dec. 628, 633 (BIA 1988).

█ In this Circuit, we have not dealt directly with the proper standard for determining whether the BIA has committed an abuse of discretion in denying a § 212(c) waiver. However, in a similar context, involving applications for a discretionary stay of deportation, this Court has concluded that a decision of the BIA may be remanded if it fails adequately to consider the evidence in the record which favors an applicant. In *Sotto v. INS*, 748 F.2d 832 (3d Cir.1984), Sotto applied for a stay of deportation based on his fears of political persecution; the BIA affirmed the denial of his application, holding that Sotto did not substantiate his claims. The BIA's opinion failed, however, to discuss certain evidence in Sotto's favor, an affidavit by a former general stating that Sotto was on a wanted list in the Philippines as a result of his anti-Marcos political activities. This Court stated:

> Although our review of the Board's findings is limited, and we may overturn the Board's determination of Sotto's claims only for abuse of discretion, we are not foreclosed from determining whether the Board followed proper procedures and considered and appraised the material evidence before it. If the administrative record fails to reveal that such evidence has been fairly considered, the proper course is to remand the case to the INS so that the Service may evaluate such evidence and consider its effect on the application as a whole.... [T]o determine whether the administrative action was arbitrary, the courts must be apprised why evidence, relevant and persuasive on its face, was discredited.

*Id.* at 837 (citations omitted).

We have also vacated a decision of the BIA which gave "insufficient consideration" to an important factor in favor of an application seeking a stay of deportation for reasons of family hardship. *Bastidas v. INS*, 609 F.2d 101, 105 (1979); *see also Tovar v. INS*, 612

F.2d 794 (3d Cir.1980).[2] In *Bastidas,* we concluded that the BIA's decision did not reasonably reflect the evidence in the record of Bastidas's close ties with his family; we held that the decision of the BIA "will not be affirmed by this court unless the reasons for such a finding are made clear." 609 F.2d at 105.

Other circuits, which have reviewed denials of § 212(c) waiver by the BIA, have applied a similar abuse of discretion standard. *See, e.g., Diaz–Resendez v. INS,* 960 F.2d 493, 495 (5th Cir.1992). In *Diaz–Resendez,* the Fifth Circuit reversed the Board's denial of § 212(c) relief because "the record herein does not reflect that the Board actually considered or meaningfully addressed Diaz–Resendez's assertions of hardship," and because the Board "inappropriately evaluated" the evidence of Diaz–Resendez's rehabilitation. *Id.* at 497.

Given the balancing test established in *Marin* and the standards for finding an abuse of discretion by the BIA discussed above, along with the fact that the BIA did find that Tipu's twenty consecutive years of uninterrupted residence in the United States constituted an unusual and outstanding equity in his favor, App. at 7, four aspects of the BIA's opinion are sufficiently questionable or depart from BIA precedent significantly enough as to provide a cumulative basis for vacating the Board's decision.

First, the Board inexplicably discounted significant evidence of the hardship that Tipu's deportation would impose on his brother and his family given their financial dependency upon Tipu and the brother's ill health. Tipu submitted letters from his brother Arshad and Arshad's physician attesting to the life-threatening nature of Arshad's illness and to Tipu's crucial role in providing transportation for Arshad to and from dialysis. App. at 26, 27. The BIA's opinion recognized that Arshad's "physical welfare depends on his brother's ability to transport him to necessary medical care" and that Arshad's family "is financially dependent on [Tipu]." App. at 7. Nevertheless, the BIA failed to find that Arshad's ill health is an outstanding equity in Tipu's favor, observing without elaboration that "the family survived while [Tipu] was incarcerated." *Id.* Evidence in the record suggests that Arshad's condition has substantially worsened in the decade since Tipu was incarcerated for ten months in 1982; a 1986 letter from Arshad's doctor states that "given his deteriorating situation I feel that Mr. Tipu is essential for Mr. Arshad's care and safety." App. at 27. Thus, while the BIA opinion does conclude that the hardship to Tipu's brother and his family members are favorable factors in Tipu's behalf, the BIA's discussion of these factors suggests a failure to properly weigh Arshad's deteriorating condition and his family's increasing dependency on Tipu.

Second, Tipu introduced credible evidence that his role in the heroin conspiracy was a minor one. Tipu's probation officer wrote letters to the taxi licensing authority in Washington, D.C., in 1982 and to the INS in 1983 on Tipu's behalf. App. at 25, 38. In these letters, Tipu's probation officer stated Tipu was "remotely involved in a drug conspiracy case" and that Tipu's "role in the conspiracy can only be described as a very minor one." Tipu testified at his 1986 deportation hearing that his role in the conspiracy was limited to attending a dinner where the conspiracy was discussed. App. at 56–60. One of the factors listed in the *Marin* test to be weighed in consideration of an application for a § 212(c) waiver is the "nature, recency, and seriousness" of any crimes committed by the applicant. Nevertheless, the opinion of the BIA placed great emphasis on Tipu's conviction, emphasis that ascribes a seriousness to Tipu's crime that is out of proportion to the nature and recency of the offense. The BIA's opinion states:

> The respondent's conviction for conspiracy to import a highly addictive and often lethal drug is "weighty evidence of respondent's undesirability as a permanent resident. The pernicious effects of drugs on American society are well documented."

2. Neither *Tovar* nor *Bastidas* involved applications for § 212(c) waivers of deportation for drug-related activity. Both involved review of the BIA's denial of petitions for a discretionary stay of deportation where the BIA held that the applicants failed to show "extreme hardship" sufficient to meet the statutory requirements for a stay.

*Hazzard v. INS*, 951 F.2d 435, 437 (1st Cir.1991).... [T]he seriousness of his criminal action clearly demonstrates a disregard for the welfare of society as a whole. *See Hazzard v. INS, supra; Matter of Edwards, supra.*

It is instructive that both *Hazzard* and *Edwards* involved convictions of individuals who repeatedly engaged in serious drug-related crimes. Hazzard was convicted of three state drug charges and one federal cocaine distribution charge all over a six year period. Edwards was convicted of six burglary-related charges and of seven drug possession or distribution-related charges between 1977 and 1987. Neither Hazzard nor Edwards demonstrated that he was rehabilitated and neither was granted a § 212(c) waiver by the BIA. The assertion of the BIA that Tipu's passive involvement in one preliminary meeting showed a serious disregard for the welfare of our society is disproportionate to Tipu's involvement, particularly when compared with the actions of others denied § 212(c) relief. Thus, the BIA's opinion failed to properly consider the "nature, recency and seriousness" of Tipu's one conviction.

Third, the BIA failed to give proper weight to substantial evidence of Tipu's complete rehabilitation. Tipu pled guilty to the conspiracy charge against him and made productive use of his time in prison by earning a G.E.D. diploma. App. at 64. At his 1986 deportation hearing, Tipu repeatedly expressed his remorse for his actions. App. at 56–60. Tipu had no further criminal convictions or any personal involvement with drugs either before or after his conviction.

Tipu received strong positive letters from his minister, from a hospital where he performed community service and from two other character witnesses. Letters by Tipu's probation officer, which the BIA characterized as being "favorable," were in fact strikingly positive, stating that Tipu is "a trustworthy person" whose participation in the conspiracy was "an aberration." App. at 7, 38. Thus, the facts of Tipu's case provide strong evidence that he is fully rehabilitated, a factor which the BIA in the past has emphasized as a potentially crucial equity in

favor of a § 212(c) applicant. *Matter of Edwards*, Int. Dec. 3134 (BIA May 2, 1990); *Matter of Buscemi*, 19 I & N Dec. 628 (BIA 1988).

The BIA has emphasized the importance of a thorough review of the possible factors in favor of an application for § 212(c) relief: "[A] proper determination as to whether an alien has demonstrated unusual or outstanding equities can only be made after a complete review of the favorable factors in his case." *Matter of Edwards*, Int. Dec. 3134 at 7 n. 3 (BIA May 2, 1990). However, the BIA's discussion of Tipu's rehabilitation is hardly a "complete" review.

The BIA's opinion did briefly discuss the evidence of Tipu's rehabilitation. However, it failed to find that Tipu was rehabilitated, or to hold that his rehabilitation was a substantial equity in his favor, citing instead Tipu's knowing participation in the conspiracy as if that precluded his later rehabilitation. App. at 7.

Two other federal circuits have considered cases raising nearly identical issues. In both *Diaz–Resendez v. INS*, 960 F.2d 493 (5th Cir.1992) and *Vergara–Molina v. INS*, 956 F.2d 682 (7th Cir.1992), applications for § 212(c) relief from deportation were denied by the BIA and the applicants appealed, based on the BIA's failure to consider evidence of their rehabilitation. In *Vergara–Molina*, the court held that the BIA "abuses its discretion when it fails to weigh important factors and to state its reasons for denying relief." *Id.* at 685. The court denied relief, however, finding that the "BIA's opinion in Mr. Vergara's case, when assessed as a whole, demonstrates adequately, albeit imperfectly, that the Board heard and thought about the relevant factors." *Id.*

In *Diaz–Resendez*, the BIA's opinion discussed rehabilitation but focused largely on whether Diaz–Resendez expressed remorse for his actions and failed to consider other positive evidence of his rehabilitation. The Court stated it was "unpersuaded that the Board 'actually consider[ed]' and 'meaningfully addressed' all of the factors concerning rehabilitation." *Id.* at 498 (citing *Zamora–Garcia v. INS*, 737 F.2d 488, 490–91 (5th Cir.1984)). The court held that the BIA's

cursory treatment of the issue of rehabilitation amounted to an abuse of discretion and reversed. Similarly, we are concerned here that the BIA's cursory treatment of Tipu's rehabilitation demonstrates a refusal, following any conviction for a drug offense, to acknowledge that rehabilitation is feasible. *See Gonzalez v. INS*, 996 F.2d 804, 810–11 (6th Cir.1993) (INS at oral argument could provide only one example in over 3,000 BIA decisions where the BIA exercised its discretion in favor of an alien convicted of a drug offense; a BIA policy of not granting a § 212(c) waiver in a case where an alien has been convicted of a serious drug offense might well in and of itself be an abuse of discretion).

Fourth, the Board's decision includes a factual error in its weighing of the equities in that it states Tipu has no property in this country. App. at 4, 7. The record shows that Tipu is an owner/operator of the taxicab which he drives.[3] The "existence of property or business ties" is explicitly laid out in the *Marin* balancing test as one of the nine factors to be weighed in an applicant's favor. While the BIA has not specifically defined "property or business ties" for purposes of the *Marin* test, ownership of a taxicab which is operated as a business and on which taxes have been regularly paid is clear evidence of "property or business ties" between Tipu and the United States. Thus, the Board failed to consider one of the factors in Tipu's favor, a practice which in *Sotto v. INS* resulted in a remand for reconsideration and which other courts have relied upon as grounds for reversal.

## IV.

At oral argument and in his brief before this Court, Tipu indicated his inten-

tion to file a Motion to Reopen with the Board based both on Tipu's eligibility for relief under 8 U.S.C. § 1254(a)(2)[4] and in order to present evidence of changes in the equities of his case over the seven years since his case was first heard by an immigration judge. This Court has recently spoken on the question of when an immigrant facing deportation may make a motion to reopen in order to present further evidence.

In *Katsis v. INS*, 997 F.2d 1067 (3d Cir. 1993), we upheld a determination by the BIA that it may deny as a matter of law an alien's motion to reopen deportation proceedings to seek discretionary relief if the alien in question is subject to an administratively final deportation order. We held that aliens whose appeals for § 212(c) relief are denied by an immigration judge and who either do not appeal or whose appeals are denied by the BIA are no longer lawfully admitted for permanent residence in this country and thus are not statutorily eligible for discretionary relief. Thus, under this holding, on August 3, 1992, when the BIA denied his appeal, Tipu became subject to an administratively final deportation order and lost his status as an alien lawfully admitted for permanent residence. However, as this Court held in *Katsis*:

> If error is found in a Board determination that an alien is deportable and undeserving of section 212(c) relief, reversal nullifies the finality of the deportation order and the consequent status change as well. Given that the deportation order cannot stand where such an error has been made, there is no reason to allow the deportation order to preclude a motion for reconsideration.

*Id.* at 1075. Thus, our reversal of the Board's determination that Tipu is ineligible

---

3. App. at 30, 32 (IRS forms showing depreciation of Tipu's business property, Barwood Taxi # 100, purchased for $1,700 in 1984); App. at 37 (letter from Eastern Cab Co. describing Tipu as "a taxicab owner-operator"); App. at 103 (transcript of 1986 deportation hearing recording an exchange with immigration judge concerning Tipu's ownership of the cab he drives).

4. Under 8 U.S.C. § 1254(a)(2), the Attorney General may suspend deportation of an alien who became deportable due to a drug-related crime

but who has remained in the U.S. for ten years following the crime and who "during all of such period has been and is a person of good moral character; and is a person whose deportation will, in the opinion of the Attorney General, result in exceptional and extremely unusual hardship to the alien or to his spouse, parent, or child who is a citizen of the United States or an alien lawfully admitted or permanent residence." Tipu was convicted on January 22, 1982, and was released from prison more than ten years ago.

for § 212(c) relief also entitles Tipu on remand to pursue a motion to reopen.

At oral argument, we pressed appellees for an explanation as to why it took the Board six years to render a decision in Tipu's case, without receiving a compelling answer. Given the high probability that the equities in this case have altered in the eight years since the record was developed before an immigration judge, we would anticipate that the Board will seriously consider a motion to reopen. We have no idea, of course, as to how any additional evidence will "cut," and we certainly intimate no view as to how the Board should resolve the case on remand, though we do require that BIA reweigh the relevant factors, something that only it can do.

## V.

As discussed above, the BIA's opinion denying Tipu's application for § 212(c) relief failed adequately to explain its discrediting of three factors in Tipu's favor—the hardship Tipu's deportation would impose on his brother and his brother's family, Tipu's minor role in a single crime ten years previous to the BIA opinion, and Tipu's rehabilitation. In addition, the BIA did not consider Tipu's property and business ties to this country in the form of his ownership of a taxicab and his operation of a taxi since 1983. In combination, these four defects in the BIA's opinion provide grounds for vacating it. Thus, for all the reasons discussed above, we will grant the petition for review, we will vacate the decision of the BIA and we will remand this case to the BIA for further proceedings consistent with this opinion.

ALITO, Circuit Judge, dissenting:

The majority has wandered well beyond the limited scope of appellate review that we are permitted to exercise in a case like this. Because I believe that the decision of the Board of Immigration Appeals ("BIA") cannot be disturbed under the correct standard of review, I dissent.

The petitioner in this case applied for a waiver of deportation under Section 212(c) of

the Immigration and Nationality Act, 8 U.S.C. § 1182(c). Decisions under this provision are expressly committed to the Attorney General's "discretion." Exercising authority delegated by the Attorney General,[1] the BIA considered the petitioner's request and weighed the factors bearing on whether a waiver should be granted.

The BIA found one weighty factor against the petitioner—his conviction for conspiracy to import approximately one pound of heroin into this country. While recognizing that this offense occurred ten years earlier, the BIA nevertheless viewed it as "a serious adverse factor" that "demonstrate[d] a disregard for the welfare for society as a whole."

The BIA found that there were countervailing factors in the petitioner's favor. Among other things, the BIA noted that the petitioner's brother, Mohammed Arshad, and his brother's family were dependent upon him. Mohammed Arshad suffers from renal failure and looks to the petitioner for financial support and for transportation to and from the facility where he receives kidney dialysis. The BIA took this factor into account, noting that "the hardship to [petitioner's] lawful permanent resident brother and his United States citizen family members are favorable factors in the [petitioner's] behalf." The BIA also noted the facts indicating that petitioner had been rehabilitated, stating:

> As to his rehabilitation, there is no evidence of additional criminal behavior other than the serious conviction for conspiracy. In his favor we consider the [petitioner's] return to his employment as a taxi driver after his incarceration. He also engaged in volunteer activities in the local area and has favorable character references. He received a favorable report from his probation officer.

In the end, however, after considering all of the factors, the BIA determined, as a matter of discretion, not to grant a waiver.

Our standard of review in a case such as this is narrow. We "do[ ] not have the authority to determine the weight to afford to each factor." *Cordoba–Chaves v. INS*, 946 F.2d 1244, 1246 (7th Cir.1991); *accord Gouv-*

---

**1.** *See* 8 C.F.R. §§ 3.0, 3.1(a)(1) & (d)(1).

*eia v. INS,* 980 F.2d 814, 819 (1st Cir.1992); *Nunez–Pena v. INS,* 956 F.2d 223, 226 (10th Cir.1992); *Sanchez v. INS,* 755 F.2d 1158, 1160 (5th Cir.1985). Rather, as the majority notes, a discretionary decision of the BIA may not be disturbed unless it is "arbitrary, irrational or contrary to law." *So Chun Chung v. INS,* 602 F.2d 608, 612 (3d Cir. 1979); *accord Marroquin–Manriquez v. INS,* 699 F.2d 129, 133 (3d Cir.1983), *cert. denied,* 467 U.S. 1259, 104 S.Ct. 3553, 82 L.Ed.2d 855 (1984). Under this standard, it is clear that the BIA's decision here should be sustained, for whatever else one may think about that decision, it was not arbitrary, irrational, or contrary to law. As the First Circuit aptly wrote in a similar case, the BIA's decision "was a judgment call, pure and simple," and we should "refuse to second-guess the Board on the manner in which it weighs different factors when arriving at its ultimate decision." *Gouveia,* 980 F.2d at 819.

My colleagues in the majority, however, vacate the BIA's decision essentially because they do not like the way the BIA weighed the various factors. The majority finds that BIA put too much "emphasis" on the petitioner's conviction, stating that the BIA "ascribe[d] a seriousness to Tipu's crime that is out of proportion to the nature and recency of the offense." Majority Opinion at 584. In a similar vein, the majority faults the BIA for failing to place enough emphasis on the hardship that the petitioner's deportation would have on his brother and his brother's family. Although the BIA considered and gave weight to this factor, the majority finds that the BIA erred in "fail[ing] to find that Arshad's ill health is an *outstanding* equity in Tipu's favor," as opposed to merely a *"favorable* factor[ ]." Majority Opinion at 584 (emphasis added). Furthermore, the majority criticizes the BIA's evaluation of evidence of the petitioner's rehabilitation. While the

BIA counted this evidence in the petitioner's favor, the majority finds that "the BIA failed to give *proper* weight" to this evidence. Majority Opinion at 585 (emphasis added).

Merely stating what the majority finds—that the BIA put too much "emphasis" on one factor, failed to evaluate another factor as "outstanding" rather than merely "favorable," and did not give "proper weight" to a third factor—seems to me to demonstrate that the majority, in deed if not in word, has applied the wrong standard of review.[2] Instead of determining whether the BIA acted arbitrarily, irrationally, or contrary to law, the majority has usurped the BIA's place and weighed the relevant factors for itself—apparently in accordance with its own views of drug and immigration policy. I cannot endorse this approach.

"In this government of separated powers, it is not for the judiciary to usurp Congress' grant of authority to the Attorney General by applying what approximates *de novo* appellate review." *INS v. Rios–Pineda,* 471 U.S. 444, 452, 105 S.Ct. 2098, 2103, 85 L.Ed.2d 452 (1985). Applying the limited standard of review that we may properly exercise in reviewing a BIA decision such as the one before us, I see no basis for overturning that decision, and I would therefore deny the petition for review.

---

**2.** In addition to these three criticisms of the BIA's decision, the majority states that the "Board's decision includes a factual error." Majority Opinion at 586. Whereas the BIA's opinion stated that the petitioner owned no property in this country, the majority finds that the record establishes that as of 1986 the petitioner owned a taxicab that he had purchased two years earlier for $1700. Majority Opinion at 586 & n. 3. The

notion that the BIA might have reached a different result in this case had it only known that the petitioner owned this vehicle strikes me as fanciful. Nevertheless, if the majority merely wished to remand this case so that the BIA could consider this fact, I would not object. The majority, however, uses this apparent makeweight to support its much broader holding.