

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-16-2004

# Tjong v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-1322

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Tjong v. Atty Gen USA" (2004). *2004 Decisions.* Paper 595.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/595

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

———

No. 03-1322

———

LOI HIN TJONG,

Petitioner

v.

JOHN ASHCROFT, ATTORNEY GENERAL
OF THE UNITED STATES OF AMERICA,

Respondent

———

Petition for Review of an Order
of the Board of Immigration Appeals
(A78-687-359)

———

Submitted Under Third Circuit LAR 34.1(a)
March 8, 2004

Before:  SLOVITER, NYGAARD, Circuit Judges and OBERDORFER, District Judge *

(Filed: June 16, 2004)

———

OPINION OF THE COURT

———

\*     Hon. Louis F. Oberdorfer, United States District Court for the District of
Columbia, sitting by designation.

SLOVITER, <u>Circuit</u> <u>Judge</u>.

Loi Hin Tjong ("Petitioner"), a citizen of Indonesia, has filed a Petition for Review of the Order of the Board of Immigration Appeals ("BIA") denying his motion to reconsider its prior final order of removal. In the underlying decision, the BIA affirmed the decision of the Immigration Judge ("IJ") denying Tjong's petitions for asylum, withholding of removal under the Immigration and Nationality Act ("INA"), and withholding of removal under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"). We will deny the Petition for Review.

## I.

Because the parties are familiar with the factual and procedural background of this case, we refer only to those facts that are pertinent to the issues under consideration.

Tjong arrived in the United States in 1995 as a non-immigrant visitor and overstayed his tourist visa. Based on allegations of persecution as a Christian and an ethnically Chinese citizen of Indonesia, Tjong applied for asylum and withholding of removal under the INA on July 10, 2000, and then applied for protection under the CAT.

The Immigration and Naturalization Service ("INS") charged Tjong as removable on August 29, 2000 and commenced a removal hearing on October 18, 2001. During his hearing, Tjong testified that, when he was in Indonesia he was "beaten up and [] robbed a lot" by ethnic Indonesians, often with knives, between three to four times a year. App. at

2

4, 8. Tjong testified that, on one occasion, he was robbed at knifepoint in an alley. On another occasion, he was robbed at knifepoint on a bus and then kicked and beaten; the police came and took names but did nothing more. Also, Tjong testified that he had problems at school with both the students and teachers and was often beaten up and kicked at school.

When asked to describe his worst experience as an ethnic Chinese, Tjong described an incident in 1989 or 1990 when he tried to help a little boy who had fallen off a bicycle and "dozens" of Indonesians chased him because they thought Tjong had run the boy over on his bike. App. at 8. Tjong reported that a large group of Indonesians then threw rocks at his mother's house.

Tjong also claimed that, because he was a Christian in a predominantly Muslim country, Muslims sometimes would chase him en route to church and, in one instance, his assailants chased him into a church and began throwing rocks at the church and destroying cars in the church parking lot. Tjong stated that "Christian Chinese in Indonesia are not free to go to church or to celebrate Christmas" because Muslims would riot around Christmas almost every year. App. at 10-11.

Tjong claimed that several of his friends and relatives have had problems because of their ethnicity and religious beliefs. For example, the house of his sister (also a Chinese Christian) was burned down, and a Chinese school friend was stabbed. He described his family's accounts of the 1998 riots in Indonesia, in which many Chinese

3

houses and stores were burned down. At the close of the hearing, Tjong stated that he did not feel safe in Indonesia and he fears being robbed and beaten on account of his ethnicity and religious beliefs. Tjong asserted that if he returned to Indonesia, he might be put in jail and beaten by the government because the government knew that he had previously protested poor police treatment of Chinese.

At the close of the hearing, the IJ stated that he had "serious concerns" about the forthrightness of some of Tjong's testimony and that "those doubts . . . impair[ed] Tjong's] credibility"; however, the IJ ultimately could not "justify an adverse credibility finding" with respect to the core of Tjong's claim and his "scattered" instances of mistreatment. App. at 34-35.

Nonetheless, the IJ denied all forms of relief. Because Tjong failed to apply for asylum within one year after arriving in the United States as required under the statute and, further, failed to demonstrate "changed circumstances" or "extraordinary circumstances" to excuse his untimeliness, the IJ denied Tjong's application for asylum. As for Tjong's claim for withholding of removal, the IJ found that the instances in which Tjong was mistreated involved cases of mixed motives, where his assailants had criminal intentions (i.e., robbery) and some degree of anti-Chinese sentiment. See, e.g., App. at 4-5 (Tjong explaining that Indonesians robbed him "because they need[ed] money, and also they don't like the Chinese") (emphasis added). The IJ concluded that Tjong's instances of mistreatment, though regrettable and unfortunate, were not in their cumulative effect

4

"sufficiently invidious or pervasive as . . . to rise to the level of past persecution" based on Chinese ethnicity and/or Christianity. App. at 39. Accordingly, the IJ denied Tjong's applications for withholding of removal under the INA and the CAT.

The BIA affirmed the IJ's decision without an opinion on August 12, 2002. Tjong sought to overturn the IJ's decision, but the BIA denied his motion for reconsideration[1] on January 6, 2003, citing Tjong's failure to state the IJ's specific errors of fact or law as required under 8 C.F.R. § 3.1(d)(2)(i)(G). Tjong filed this Petition for Review on February 4, 2003.

## II.

The IJ found that Tjong's asylum claim was time-barred because Tjong failed to apply for asylum within one year of arrival and further, Tjong failed to demonstrate "changed circumstances" or "extraordinary circumstances" to excuse his untimeliness. In light of 8 U.S.C. § 1158(a)(3), which provides that "[n]o court shall have jurisdiction to review any determination by the Attorney General" relating to the timeliness of an asylum application, we lack jurisdiction to review the IJ's conclusion that Tjong's asylum application was untimely. See Tarrawally v. Ashcroft, 338 F.3d 180, 185 (3d Cir. 2003).

Tjong's Petition for Review also appeals the BIA's order denying reconsideration of his claim for withholding of removal. This court reviews the BIA's decision for abuse

---

[1] Although Tjong's motion was entitled a motion for "the second appeal of the court's denial of asylum," AR 12, the BIA treated this motion as a motion for reconsideration and Tjong's appellate brief refers to it as a motion for reconsideration. App. at 43.

of discretion, <u>Nocon v. INS</u>, 789 F.2d 1028, 1029 (3d Cir. 1986), and we will overturn its decision only if it is "arbitrary, irrational or contrary to law." <u>Tipu v. INS</u>, 20 F.3d 580, 582 (3d Cir. 1994) (quotations and citations omitted). The IJ's determination that Tjong is not entitled to withholding of removal under the INA[2] may be reversed only if "a reasonable factfinder would have to conclude that the requisite fear of persecution existed." <u>INS v. Elias-Zacharias</u>, 502 U.S. 478, 481 (1992).

The Government contends that the BIA properly denied Tjong's motion to reconsider because he failed to "state the errors of fact or law in the prior Board decision." App. at 43. One of the grounds on which the Government rests is the procedural defect apparent from the record in this case, which we believe is dispositive.

The BIA affirmed the IJ's deportation order on August 12, 2002, and it became a final and appealable order on that day. Tjong filed a "Brief in Support of the Second Appeal of the Court's Denial of Asylum" on August 28, 2002, which the Board construed as a motion for reconsideration and denied on January 6, 2003. The petition for review with the Court of Appeals was filed on February 4, 2003, which is timely as to the January Order but, as noted above, untimely as to the August Order.

The BIA's Order dated January 6, 2003 denying reconsideration states:

> The respondent's motion is denied for failure to meet essential statutory or regulatory requirements. See 8 C.F.R. § 3.1(d)(2)(i)(G). A motion to reconsider shall state the errors of fact or law in the

---

[2]    Tjong did not appeal the IJ's finding that he was not eligible for withholding of removal under the CAT.

6

prior Board decision and shall be supported by pertinent authority. In his motion, the respondent provides only generalized assertions. He fails to allege with any specificity what errors of fact or law were made by the Board. Accordingly, the motion is denied.

AR 2. Tjong does not address the procedural defects noted by the BIA, and we deny the petition for review on that ground.[3]

For the reasons set forth above, we will deny the Petition for Review.

---

[3] Even assuming that Tjong's motion for reconsideration met the procedural requirements, we find that the IJ's conclusion that Tjong was not the victim of persecution is substantially supported by the record.