

2006 Decisions

**Opinions of the United States Court of Appeals for the Third Circuit**

9-13-2006

# Ugbome v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-3020

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Ugbome v. Atty Gen USA" (2006). *2006 Decisions.* Paper 461.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/461

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

————

No. 05-3020

————


PATIENCE UGBOME,
                                    Petitioner

v.

ATTORNEY GENERAL OF THE
UNITED STATES; SECRETARY OF
DEPARTMENT OF HOMELAND SECURITY,
                                    Respondents

————

Petition for Review of the Order
of the Board of Immigration Appeals
(A97-516-242)
Immigration Judge: Hon. Grace A. Sease

————


Submitted Under Third Circuit LAR 34.1(a)
September 12, 2006

Before: SCIRICA, Chief Judge, SLOVITER, and BARRY, Circuit Judges

(Filed September 13, 2006)

————


OPINION

SLOVITER, Circuit Judge.

Patience Ugbome has filed a timely petition for review of the decision of the Board of Immigration Appeals ("BIA") affirming without opinion the order of the Immigration Judge ("IJ") denying her application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). The IJ found that Ugbome had failed to meet her burden of proving eligibility for asylum, 8 U.S.C. § 1158(b)(1)(B)(i), withholding of removal, 8 U.S.C. § 1231(b)(3)(C), or relief under the CAT, see 8 C.F.R. § 1208.16(c), based on the IJ's determination that Ugbome's story was not credible and was not sufficiently corroborated. We have jurisdiction under 8 U.S.C. § 1252(a)(1). We will grant the petition for review.

## I.

Ugbome is a thirty-eight-year-old native and citizen of Nigeria. She entered the United States on July 6, 2004, with her nine-year-old son, Custer. She has been married since 1996 to Godwin Ugbome, with whom she resided in Effurun, in the Delta state of Nigeria. Her asylum claim is based upon persecution she claims to have suffered as a result of her husband's political activism and subsequent disappearance.

Ugbome conceded removability and filed an application for asylum, withholding of removal, and withholding of removal under the CAT. Her asylum hearing was held on October 20, 2004. In support of her application, Ugbome testified and presented documentary evidence including country reports, a newspaper article from a Nigerian newspaper regarding her husband's disappearance, and sworn statements from Moses

2

Ugbome, her husband's brother, and the Ugbomes' family attorney in Lagos.

Ugbome testified that her husband became involved in the Niger Delta Youth Movement ("NDYM") in 2001. NDYM sought to secure jobs and social services for Nigerians and to clean up the pollution caused by oil companies in the Niger Delta. Its members engaged in frequent protests against foreign oil companies suspected of causing pollution. Ugbome testified that NDYM held protests about twice a month, drawing 200 to 300 people to each protest, and that her husband would often speak at these protests. The protests would begin in the town of Effurun and end in Warri. The police used threatening and violent methods such as whips, tear gas, and shooting guns in the air in order to suppress them.

Ugbome testified that her husband was invariably arrested during or after the protests. When the police came to their home looking for her husband, they would push Ugbome around. Her husband was detained for about a week after each protest and would return home with a swollen face and bruises from beatings. She testified that they could not seek treatment at the hospital because the hospitals would not treat the injuries without asking that a police report be filed about the source of the injuries. They treated his injuries with painkillers and medicine from the pharmacy instead.

Ugbome testified that in order to avoid further detention and to protect the family, her husband left the Niger Delta on July 18, 2003. She has not heard from him since, although he had promised to send for her when he found a safe place for them to settle. Ugbome testified that after her husband's departure, the police would come to her home

about twice a month looking for him, threatening and intimidating her in order to find him. Ugbome testified that the police took her and her infant daughter to the police station on January 5, 2004. The police interrogated her and threatened her for three to four hours before letting her go. Ugbome stated that she believed they would have physically hurt her if not for the presence of her daughter (who died due to a congenital heart defect before Ugbome came to the United States). Ugbome left the Delta region in May 2004 because "the threat was becoming too much." App. at 102.

Ugbome stayed in Lagos, where her husband's family resided, for a month, but left at the advice of her husband's family after her daughter's death. She traveled with her son and Moses Ugbome to Cotonou in the neighboring country of Benin, where they stayed for about two weeks, during which time Moses Ugbome acquired visas and airline tickets for them to travel to the United States. She testified that he told her he had acquired those items with a friend of her husband's. Ugbome and her son left for the United States on July 8, 2004, where they were detained by Customs' Officials, who determined that the visas were fraudulent.

On cross-examination, Ugbome testified that her sister still lived near Warri, but that the rest of her family and her husband's family lived in Lagos. She testified that she did not know much about the protests in which her husband participated because she did not attend them. She was unable to remember the month of the first time in 2001 that her husband was arrested after a protest.

She stated the date of her own detention by the police as January 15, 2004, instead

4

of January 5, 2004, as she had on direct and as she did in her second affidavit in support of her application for asylum. She did not know with whom her husband had departed Warri, except for one person whose wife had told her in the marketplace that she also had not heard from her husband. She did not know much about NDYM members because she was not involved in the group.

Ugbome was also cross-examined about the circumstances of the interview that resulted in the publication of a small story in the Daily Independent, a newspaper in Nigeria. She stated that she gave the interview in May while she was in Lagos, but that the article was not published until after she had left for the United States almost two months later. She said she was put in contact with the reporter by Moses Ugbome, and that she had given the interview despite the fact that it would draw attention to her whereabouts because she wanted the government "to answer the plight of the Delta state movement." App. at 135.

In response to questions from the IJ, Ugbome reported that her husband was self-employed as a vendor of stationary and paper products, and that he worked from home. Despite his repeated detentions, she stated that her husband was still able to support the family because he was self-employed and could work whenever he was not being detained, although she was unable to provide details about how he did this.

Ugbome stated that she did not know how the United States immigration stamp from December, 2002 had gotten into her passport because she had never before been to the United States. She also did not know the visas Moses Ugbome had acquired were

5

false because she did not know anything about visas and she did not look at them.

The IJ denied Ugbome's claims for asylum, withholding of removal and CAT relief based on her finding that Ugbome's story was not credible and that she had not provided sufficient corroboration of her claims. She noted the lack of documentation of Ugbome's story from people within the Delta region who would have firsthand knowledge of Godwin Ugbome's membership in NDYM and his political activities. She also noted inconsistencies between Ugbome's story and some of the background materials, which reported manned checkpoints and curfews in Warri during the time period when Ugbome's husband was allegedly participating in mass protests twice a month. The IJ concluded that Ugbome's claim that there had been demonstrations twice a month was exaggerated. The IJ noted that Ugbome's only independent corroboration was the newspaper article that had appeared as a result of the interview she herself had provided. The IJ determined that the "interview appears to have been created for the sole purpose of establishing the facts that [Ugbome] has presented today." App. at 54.

The IJ also discounted the value of the sworn statements from Moses Ugbome and the Ugbomes' attorney. The IJ found that their statements failed to demonstrate any firsthand knowledge of Godwin Ugbome's activities. The IJ also noted that there was no marriage certificate or any other proof that Ugbome was married. The IJ found that Ugbome "has failed to present the corroborating evidence that would be reasonably expected from individuals in the Niger Delta who could corroborate . . . her husband's political activism and his high-profile speaking ability. Her reasons for not providing it

6

can only be described as lame." App. at 56. The IJ also found that Ugbome had willfully presented a false visa, because the visa was dated 2002, so it would be obvious that it was forged: "It's [sic] strains credulity to think that somebody attempting to enter the United States on a visa would not examine that visa prior to representing it." App. at 56.

The IJ also noted that Ugbome had failed to demonstrate that she could not safely relocate within Nigeria. The IJ concluded that Ugbome had failed to meet her burden to qualify for asylum, withholding of removal or relief under the CAT and accordingly ordered her removed. The BIA affirmed on May 16, 2005, without opinion.

## II.

Because the BIA affirmed without opinion, we review the IJ's opinion under the same standards of review as we would a decision of the BIA. Abdulai v. Ashcroft, 239 F.3d 542, 549 n.2 (3d Cir. 2001). To qualify for asylum, an alien must demonstrate that she is a "refugee," which means that she is unable or unwilling to return to her country of nationality because of past persecution or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. §§ 1158(b)(1), 1101(a)(42)(A). The IJ's conclusion that Ugbome did not meet her burden to demonstrate a likelihood of persecution was based on the IJ's finding that Ugbome's testimony was not credible. This is a determination of fact that we review for substantial evidence. Dia v. Ashcroft, 353 F.3d 228, 247-48 (3d Cir. 2003) (en banc).

We have stated that "[a]n alien's credibility, by itself, may satisfy his burden, or

7

doom his claim." Id. at 247. In this case, although the IJ noted certain discrepancies in Ugbome's testimony, the IJ primarily grounded her finding of adverse credibility in Ugbome's failure to present corroborating evidence.[1] She held that Ugbome "has presented no corroboration of the activities that she alleged took place in the Delta state," noting the absence of statements from family members who live in the region "that would know of her husband's alleged activities and of her alleged involvement with the police because of her husband." App. at 52. The IJ also stated that basic aspects of Ugbome's claim, such as her marriage to Godwin Ugbome, her husband's membership in NDYM and his activities on behalf of that group, were left uncorroborated. See Miah v. Ashcroft, 346 F.3d 434, 439 (3d Cir. 2003) (noting Abdulai's three-part test for determining whether an applicant could be required to provide corroborating evidence: (1) an identification of the facts for which it is reasonable to expect corroboration; (2) an inquiry as to whether the applicant has provided material corroborating the relevant facts; and, if he or she has not, (3) an analysis of whether the applicant has adequately explained his or

---

[1] The court notes that, while "[i]t might seem intuitive that a lack of corroboration could cast doubt on the veracity of a witness's testimony," a credibility determination is nevertheless "to be independent of an analysis of the sufficiency of an applicant's evidence" and "[a] failure of proof is not a proper ground per se for an adverse credibility determination. The latter finding is more appropriately based upon inconsistent statements, contradictory evidence, and inherently improbable testimony." Chen v. Gonzales, 434 F.3d 212, 221 (3d Cir. 2005); see also Toure v. Att'y Gen., 443 F.3d 310, 323 (3d Cir. 2006) ("[C]orroboration and credibility, although intuitively related, are distinct concepts that should be analyzed independently."); Senathirajah v. I.N.S., 157 F.3d 210, 216 (3d Cir. 1998) ("Common sense establishes that it is escape and flight, not litigation and corroboration, that is foremost in the mind of an alien who comes to these shores fleeing detention, torture and persecution. Accordingly, corroboration is not required to establish credibility.").

her failure to do so) (internal citations and quotations omitted).

While it is reasonable to expect corroboration for Ugbome's marriage and her husband's connection with NDYM – clearly central to Ugbome's claim – and the Real ID Act of 2005 makes it clear that an IJ's conclusion as to the availability of unproduced corroborative material is entitled to great deference,[2] this is not a case where the applicant has utterly failed to provide corroborating evidence. The IJ's characterization of Ugbome as providing "no corroboration," App. at 52, is not supported by substantial evidence as she did provide a family member's corroboration of the facts that fundamentally support her claim.

Two sworn affidavits from her brother-in-law, Moses Ugbome, assert that Ugbome was married to Godwin Ugbome, that her husband was a member of NDYM and a political activist, that the government had used military personnel and police to arrest the husband, who had gone into hiding, that the government continued to search for him, and that "their inability to locate him has necessitated their constant harassment of . . . [Ugbome]. . . ." App. at 180. Ugbome has also provided a letter of attestation from an Ugbome family attorney, Ayoola Orobowale, noting the same facts. App. at 182-83. Letters "from family members remaining in the applicant's home country" are precisely the sort of evidence frequently contemplated in corroboration analysis. Miah, 346 F.3d at

---

[2] Under the REAL ID Act of 2005, "[n]o court shall reverse a determination made by a trier of fact with respect to the availability of corroborating evidence . . . unless the court finds . . . that a reasonable trier of fact is compelled to conclude that such corroborating evidence is unavailable." 8 U.S.C. § 1252(b)(4).

441; <u>Abdulai v. Ashcroft</u>, 239 F.3d 542, 549, 554-55 (3d Cir. 2001) (also noting that, for due process purposes, a "decisionmaker must actually consider the evidence and argument that a party presents").

While the IJ did elsewhere note the existence of the affidavits attested to by Ugbome's brother-in-law,[3] nevertheless, in holding explicitly that Ugbome provided no corroboration for her allegations, the IJ failed to take the second step in the corroboration analysis – assessing whether "the applicant has [in fact] provided material corroborating the relevant facts." This court has repeatedly held that if the IJ (or BIA) fails to conduct this three-part inquiry, a finding regarding the lack of required corroboration must be vacated and the matter remanded. See <u>Abdulai</u>, 239 F.3d at 555; <u>Mulanga v. Ashcroft</u>, 349 F.3d 123, 138 (3d Cir. 2003); <u>see also</u> <u>Dia</u>, 353 F.3d at 253 (noting IJ's failure to perform third step in <u>Abdulai</u> inquiry); <u>Tipu v. I.N.S.</u>, 20 F.3d 580, 583-86 (3d Cir. 1994) (in evaluating denial of a request for § 212(c) relief from deportation, noting that "decision of the BIA may be remanded if it fails adequately to consider the evidence in the record which favors an applicant," and remanding where Board "inexplicably discounted" letter evidence of applicant's crucial role in assisting sick relative, and failed to give proper weight to substantial evidence of applicant's complete rehabilitation, including letters from minister, probation officer, and two other character witnesses); <u>Sotto v. I.N.S.</u>, 748 F.2d 832, 837 (3d Cir. 1984) (remanding where the BIA failed to

---

[3] The IJ commented in her opinion that the documents themselves were not sufficiently corroborated, and expressed doubt that Ugbome's brother-in-law, as well as the family attorney, could have "firsthand" knowledge of the events. App. at 55.

explain why it discredited the sworn affidavit of the applicant, thus frustrating the court's ability to review).

Where, as here, the IJ's holding is essentially that Ugbome failed to provide corroboration for her claims, more than an aside to the insufficiency of the sworn affidavits she has in fact provided is necessary for this court's review. See Toure v. Att'y Gen., 443 F.3d 310, 325 (3d Cir. 2006) ("[A]s a logical predicate to appellate review, the BIA must adequately explain the reasons for its decisions[.]") (internal citation omitted); Butt v. Gonzales, 429 F.3d 430, 436-37 (3d Cir. 2005) (where IJ simply generally described certain documents submitted by applicant as unverified and unauthenticated, court could not uphold IJ's determination absent further explanation as to why there was reason to question the authenticity of the documents).

Additionally, we note that the IJ found that Ugbome "failed to establish" that she could not relocate elsewhere in Nigeria to avoid persecution in relation to her husband's activities. A showing of past persecution will give rise to a rebuttable presumption of a well-founded fear of future persecution, but it is the *Government's* burden to rebut this presumption and demonstrate by a preponderance of the evidence that "the applicant could reasonably avoid persecution by relocating to another part of his or her country or that conditions in the applicant's country have changed so as to make his or her fear no longer reasonable." Toure, 443 F.3d at 317 (citing Mulanga v. Ashcroft, 349 F.3d 123, 132 (3d Cir. 2003); 8 C.F.R. § 208.13(b)(3)(ii) ("In cases in which the persecutor is a government or is government-sponsored . . . it shall be presumed that internal relocation

11

would not be reasonable, unless the Service establishes by a preponderance of the evidence that, under all the circumstances, it would be reasonable for the applicant to relocate.").

## III.

For the foregoing reasons, we will grant the petition for review. We will vacate the BIA's order, and remand this case to the BIA for proceedings consistent with this opinion.