SO CHUN CHUNG, Petitioner,

v.

UNITED STATES IMMIGRATION AND NATURALIZATION SERVICE, Respondent.

No. 78–2615.

United States Court of Appeals, Third Circuit.

Argued July 10, 1979.

Decided July 31, 1979.

---

Charles S. Silver (argued), Bucks County Legal Aid Society, Langhorne, Pa., for appellant.

Philip Wilens, Chief Government Regulations and Labor Section, Criminal Div., James P. Morris, Chester J. Halicki (argued), Dept. of Justice, Washington, D.C., for respondent.

Before ADAMS, ROSENN and HIGGINBOTHAM, Circuit Judges.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

Section 244(a)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1254, authorizes the Attorney General of the United States, in his discretion, to suspend the deportation of an alien and to adjust the alien's status to that of one legally admitted for permanent residence. In order to qualify for the special and discretionary relief provided for in § 244(a)(1), a deportable alien must meet three requirements. First, the alien must have been physically present in the United States for a continuous period of not less than seven years. Second, the alien must prove that he or she is a person of good moral character. Third, the alien must be a person whose deportation would, in the opinion of the Attorney General, result in "extreme hardship" to the deportable alien, or to the citizen or permanent resident spouse, parent or child of the deportable alien.[1]

---

1. Section 244(a)(1) reads:

(a) As hereinafter prescribed in this section, the Attorney General may, in his discretion, suspend deportation and adjust the status to that of an alien lawfully admitted for permanent residence in the case of an alien who applies to the Attorney General for suspension of deportation and—

(1) is deportable under any law of the United States except the provisions specified in paragraph (2) of this subsection; has been physically present in the United States for a continuous period of not less than seven years immediately preceding the date of such application, and proves that during all of such period he was and is a person of good moral character; and is

The present appeal concerns the alien So Chun Chung who has been ordered deported to Canada. Mrs. Chung is a native of Hong Kong, and a British subject. On September 27, 1965, she went through a marriage ceremony with Chi Yin Chung in Hong Kong and within a year they had a son, Paul. At the time of the ceremony, Mr. Chung was a permanent resident of the United States, and is now an American citizen. In 1968, Mrs. Chung entered Canada as a visitor and, in 1969, gave birth to her second son, Stanley. Subsequently, she received Canadian "landed immigrant" status, as a result of a petition filed on her behalf by a sister in Canada. Shortly thereafter, she entered the United States as a visitor entitled to stay for six months. She never left, however, and has now been in the country almost ten years. Mrs. Chung has also had a third son, Donald, who was born in Philadelphia and is thus an American citizen. Her three children are now thirteen, ten and nine years old.

■ Mrs. Chung apparently believed she was legally in the United States because of her husband's status as a permanent resident. In fact, unbeknownst to her, her marriage to Mr. Chung was invalid because of his prior unterminated marriage.[2] Mr. Chung has since sought to obtain a divorce in Florida, but had not been successful in

doing so as of the time this appeal was argued.[3] Inasmuch as Mrs. Chung is not legally married to Mr. Chung, she is in this country illegally and is thus deportable. She concedes this, as she must, but has requested a suspension of deportation under § 244(a)(1).

Her eligibility for such a suspension turns entirely on the existence of an "extreme hardship" either as to her, or as to her citizen son, Donald.[4] Her good moral character and residency in the United States, the other two requirements for eligibility under § 244(a)(1), have not been questioned. And, the case for extreme hardship is not without force:

Mrs. Chung has been in the country for almost ten years. She has settled in Bucks County, Pennsylvania, where she is a waitress and a taxpayer, and where her children attend school and have many friends. Of course, were the family forced to leave the country, the children's social and educational life would be seriously disrupted.

In addition, the family's financial position has been precarious, in large part because Mr. Chung's interests, both as the owner of one Chinese restaurant and as a partner in another, were eroded by his addiction to alcohol. For a brief period the children were on public assistance. Mrs. Chung is now gainfully employed as a waitress.

a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence. . . .

2. Mr. Chung was, and apparently still is, married to Evelyn Chung, whom he has been trying to divorce for more than a decade. He "married" So Chun Chung in Hong Kong under the mistaken belief that the divorce had become final. So Chun Chung did not learn of the earlier marriage until 1974. A–47.

3. Under Pennsylvania law So Chun Chung's marriage to Chi Yin Chung would be valid as soon as Chi Yin Chung obtained a divorce from Evelyn Chung. Mr. Chung's Florida divorce has apparently been delayed because of his non-payment of attorney fees. A–48.

4. The Immigration and Naturalization Service urges that the other family members are not to be considered in evaluating a § 244(a)(1) claim.

This is so, the Service argues, because Mrs. Chung's other two sons are neither citizens nor permanent residents. And, Mr. Chung, who may suffer the greatest hardship because he will be separated from his family, and has no means of supporting himself, may not be considered, according to the Service, inasmuch as he is not Mrs. Chung's legal spouse. *But see* the dissenting opinion of Board Member Appleman:

True, the statute contemplates a hardship running to individuals, but the individuals do not exist in a vacuum. The mother and citizen child cannot be viewed apart from the other two children, or even from the father. Together they make a family unit and must be viewed as such. A hardship to one is a hardship to all, and I view the dislocation of the lives of this mother and all her children as an extreme hardship to both herself and to her citizen child. A–8.

There is no evidence in the record that there is a job available for her in Canada or that Canada will accept Mrs. Chung and her children. In the latter event, Mrs. Chung and the children may be forced to go to Hong Kong.

Furthermore, Mr. Chung, who is ill, and now living apart from the family, nonetheless occupies an apartment nearby in order to see them regularly. Although Mrs. Chung has family in Canada—her parents, brothers and sisters live there—she does not communicate with them and is more attached to her friends and associates in the Bucks County community. The children have spent virtually their entire lives in the United States and there is no doubt but that the youngest son Donald, a citizen of the United States, could not remain in the country were his mother deported.

Finally, the pendency of Mr. Chung's divorce proceeding makes it possible that the period of deportation would be of only brief duration, with the family undergoing considerable social and emotional disruption only to be eligible to return to the United States within a relatively short time.

Although the family's situation was admittedly unfortunate, the immigration judge declined to find a sufficiently "extreme" hardship, and his determination was upheld by the Board of Immigration Appeals, with two members dissenting. We recognize that the power to suspend a deportation is discretionary in nature, and that the conclusion reached here was not necessarily arbitrary or irrational. But even though the Board had discretion to reject Mrs. Chung's § 244(a)(1) petition, we are troubled by the possibility that the receipt of welfare payments for her children may have played an improper role in their evaluation of her case. The matter was brought out at the hearing (A–45), specifi-

cally noted in the opinion of the immigration judge (A–28), and adverted to in both the majority and dissenting opinions of the Board (A–3, A–6, 7).

When reviewing a § 244 petition the Immigration and Naturalization Service may consider several factors in adjudging the hardship claimed by a petitioner. The financial position of a family—including the sources of its income—is obviously relevant in this regard. It is important, however, only insofar as it bears on the hardship that deportation would work on either the alien or the family. If, on the other hand, the alien's former dependence on public assistance is relied upon in denying a § 244 petition on the theory that those who have received public assistance are in some way less desirable than other aliens, we believe it is improper. The discretion given the Service under § 244 is broad, but it is a discretion to determine what does or does not constitute an extreme hardship to the applicant.[5] A consideration of the state's interest in reducing the welfare rolls—a justifiable concern—is simply not relevant to the existence of an extreme hardship.[6]

It is not at all clear that, in the present case, the Board's consideration of Mrs. Chung's receipt of public assistance was improper. Although the matter was considered by the majority, its role in their decision is not explicitly set out. The dissenting Board members, at least, were apparently of the view that Mrs. Chung's status as a public charge had influenced the majority to some extent because they emphasized that she had rejected public assistance since 1976 and that the funds she had received were not lost to the county because there was a lien on her house in the amount of the public funds expended. This latter fact was referred to in both briefs to this Court, with the parties noting that Mrs. Chung has now sold her house and the

**5.** *Contrast* 8 U.S.C. § 1251(a)(8), which permits the deportation of an alien if he or she "in the opinion of the Attorney General, has within five years after entry become a public charge from causes not affirmatively shown to have arisen after entry." Unlike § 1251(a)(8), § 1254, the provision at issue here, focuses on residency, good moral character, and extreme

hardship. As we have noted, only the last of these was contested in the present case.

**6.** *Cf. Graham v. Richardson,* 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971) (states may not discriminate against aliens in distribution of public welfare benefits).

Bucks County Department of Public Assistance has recouped all the funds the Chung family had previously received. The stress placed on these facts suggests the possibility that Mrs. Chung's petition may have been rejected, at least in part, because the Immigration and Naturalization Service believed her to have been a burden on the public purse.

■■■■ Because we view such a consideration to be irrelevant to the question before the Board in a § 244 case, and because it might conceivably have been a factor in the Board's decision here, out of an abundance of caution, we shall remand the case to the Board for reconsideration of the extreme hardship issue.[7] In so doing, we recognize that the Board's decision whether such a hardship exists will be overturned only if it is arbitrary, irrational or contrary to law. Nonetheless, we believe that such a determination, even though it is discretionary in nature, must not be influenced by factors that are not germane to the eligibility requirements set out in the Act itself.

The order of the Board will be vacated and the case remanded to the Board for further proceedings in conformity with this opinion.

---

7. When the possibility exists that the Board's exercise of its discretion was tainted by consideration of improper or irrelevant factors, remand to the Board is an appropriate remedy. *See Siang Ken Wang v. Immigration and Naturalization Service,* 413 F.2d 286 (9th Cir. 1969).