

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-30-2004

# Valdivia v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-2497

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Valdivia v. Atty Gen USA" (2004). *2004 Decisions.* Paper 310.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/310

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 03-2497 and 03-3406

GUSTAVO VALDIVIA,

Petitioner

v.

JOHN ASHCROFT, Attorney General of the United States

Respondent

On Petition for Review of an Order Entered in
The Board of Immigration Appeals
(No. A 29-744-464)

Submitted Under Third Circuit LAR 34.1(a)
September 17, 2004

Before: ALITO, AMBRO and FISHER, Circuit Judges

(Filed:   September 30, 2004)

OPINION

AMBRO, Circuit Judge

Gustavo Valdivia[1] seeks review of the decision of the Board of Immigration Appeals ("Board") affirming the decision by an Immigration Judge ("IJ") terminating conditional permanent resident status and ordering him to be removed based on the finding that his marriage to a United States citizen was not *bona fide*. Valdivia also seeks review of the denial by the Board of his motion to reconsider its earlier decision. Because we conclude that (i) the IJ's decision was supported by substantial evidence and (ii) Valdivia failed to demonstrate that the Board abused its discretion in denying his motion to reconsider, we affirm.

## I. Factual and Procedural History

Valdivia is a native and citizen of Peru. He married a U.S. citizen, Olga Lopez, in 1990. This was but a month after they met. Valdivia claims that they were introduced through common friends and corresponded approximately five or six months before Lopez traveled to Peru and married him. At the time of their marriage, Lopez was pregnant with a child from another relationship. Valdivia claims that he was not aware of her pregnancy then.

Shortly after their marriage, Lopez filed an immigrant visa petition on behalf of Valdivia at the U.S. Embassy in Lima, Peru. The petition was denied. Shortly thereafter

---

[1]The record before us uniformly shows that the Appellant's last name is "Valdivia," even though it is spelled as "Valdiva" on the cover of the Appellant's Brief.

Lopez came back to the United States and filed another visa petition on behalf of Valdivia without disclosing her initial petition. Valdivia was granted conditional permanent resident status based on this second petition and entered the United States in 1992. Then, according to Valdivia, Lopez, her daughter, and he lived in one room at his brother's apartment in New Jersey for almost a year until they were separated due to marital difficulties.

In 1994, Valdivia and Lopez jointly moved to remove the conditional status of Valdivia's residency. The Immigration and Naturalization Service ("INS")[2] denied the petition, concluding that the marriage was entered only for the purpose of procuring an immigration benefit. Subsequently, Valdivia and Lopez were divorced and Valdivia applied for a waiver of the joint petition requirement based upon the good faith of his marriage to Lopez. The INS again denied Valdivia's application. In 1996, Valdivia married Josefina Valdivia, who was then a permanent resident in the United States.

The INS began removal proceedings against Valdivia in December 1997. In October 1999, the IJ ordered him removed to Peru, ruling that his conditional permanent resident status was terminated as of January 30, 1994. The IJ found that his marriage to Lopez was for immigration purposes only. She pointed to inconsistencies in Valdivia's testimony and noted that there was no evidence other than Valdivia's own testimony that

[2]On March 1, 2003, the INS ceased to exist as an independent agency within the Department of Justice. It is currently called U.S. Citizenship and Immigration Services, a Bureau of the Department of Homeland Security.

he ever lived with Lopez.

In December 2001, after Josefina acquired U.S. citizenship, she filed an immigration petition on behalf of Valdivia. That petition was approved. He then moved the Board to remand the case to the IJ to enable him to pursue adjustment of status to a permanent resident based on the approved petition. In April 2003, the Board, among other things, summarily denied Valdivia's motion to remand. He filed a petition for review with our Court and a motion to reconsider with the Board. In July 2003, the Board denied Valdivia's motion to reconsider. Valdivia also appealed that decision. Here we consider both appeals.[3]

## II. Standard of Review

In the context of the removal proceedings, the Immigration and Nationality Act ("INA"), as amended by the Illegal Immigration Reform and Immigrant Responsibility Act, permits us to consider "only . . . the administrative record on which the order of removal is based" in evaluating an applicant's petition for review of a final order of removal. INA § 242(b)(4)(A), 8 U.S.C. § 1252(b)(4)(A). Morever, "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." INA § 242(b)(4)(B), 8 U.S.C. § 1252(b)(4)(B).

Our review of the Board's denial of Valdivia's motion to reconsider is for abuse of discretion. *INS v. Doherty*, 502 U.S. 314, 323 (1992). The Board abuses its discretion

---

[3]We have jurisdiction under 8 U.S.C. § 1252(a)(1).

when it applies an incorrect legal principle or makes factual findings that are arbitrary and capricious or lacking in substantial evidence. *Tipu v. INS*, 20 F.3d 580, 582 (3d Cir. 1994).

### III. Discussion

Valdivia argues at the outset that the IJ erred in finding that his marriage to Lopez was in bad faith. As noted above, we will affirm the Board's decision upholding the IJ's findings unless the record compels a contrary decision.

Valdivia essentially challenges a piece of evidence in the record: the results of the INS investigation. The INS investigator, among other things, reported the following: He went to the apartment building in New Jersey where Valdivia claimed that he lived with Lopez and her daughter for almost a year before they separated. The investigator interviewed two individuals sitting on the front porch who identified themselves as neighbors. Both of them recognized a photo of Valdivia but not of Lopez. They both told the investigator that Valdivia lived with Hispanic males only.

Valdivia claims that the investigation was seriously flawed because one of the interviewees refused to give her name and the investigator did nothing to verify that the interviewees actually lived in that neighborhood. The IJ's order shows, however, that the IJ was well aware of these "deficiencies" of the investigation and evaluated the reliability of the investigation results rather than blindly relying on them. Moreover, the IJ gave several other reasons for reaching her decision. For example, she noted that Valdivia's

5

credibility was undercut by his inability to remember the age of Lopez's daughter at the time they were supposedly living together and his confusion about the date of his marriage to Lopez. Although Valdivia claimed that he lived with Lopez for almost a year, he failed to corroborate this assertion with *any* evidence, either documentary or testimonial. Furthermore, the IJ pointed to the suspicious circumstances surrounding his marriage: for example, Lopez and her friend flew together to Peru, both married Valdivia and his friend respectively, and each couple was interviewed for a U.S. visa at the same time.

Valdivia points out that he submitted photographs from his wedding. The pictures might be, if anything, evidence to show that the marriage actually took place, but they do not support the claim that the marriage was *bona fide*. Similarly, the fact that Valdivia can allege a legitimate reason for the break-up of the marriage—economic hardship—does not make his marriage any more genuine.

Based on this evidence, the IJ not only found that the marriage was not in good faith, but concluded that it was for immigration purposes only. We hold that the record does not compel the contrary conclusion.

Because we conclude that Valdivia's marriage was not entered in good faith, his alternative argument, that the waiver of the joint petition requirement should have been granted, is also unavailing. Valdivia agrees that, for the waiver provision to apply, "*the . . . marriage [should have been] entered into in good faith* by the alien spouse," but

6

has been terminated through no fault of him/her.  INA § 216(c)(4)(B), 8 U.S.C. § 1186a(c)(4)(B) (emphasis added); Appellant's Brief at 22.  That, we have concluded, is a finding we do not disturb.

Lastly, Valdivia asks us to review the Board's refusal to reconsider its initial denial of his motion to remand.  We will reverse the Board's decision only if it is "arbitrary, irrational or contrary to law."  *Tipu*, 20 F.3d at 582 (quoting *So Chun Chung v. INS*, 602 F.2d 608, 612 (3d Cir. 1979)).

Valdivia's motion to remand was based on the approved immigrant visa petition filed by his second wife, *i.e.*, he was determined by the INS to be eligible for the immigrant status he sought.  The Board, however, was correct in finding that Valdivia was *prima facie* ineligible to be approved as the beneficiary of a visa petition filed by his second wife because he entered into his prior marriage for immigration purposes only.  *See* INA § 204(c)(2), 8 U.S.C. § 1154(c) ("[N]o petition [based on an immediate relative status to a U.S. citizen] shall be approved if (1) the alien has previously been accorded, or has sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States or the spouse of an alien lawfully admitted for permanent residence, by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws, or (2) the Attorney General has determined that the alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws.").

7

Although the immigrant petition for relative filed by Valdivia's second wife was approved, that approval was issued before the Board made a final determination that the prior marriage was not *bona fide*. The statute is clear that once an alien entered into a marriage for immigration purposes only, s/he is not given a second chance. As we agree with the Board's finding of prior bad faith marriage, we cannot conclude that the Board's decision was contrary to law when it determined that Valdivia was *prima facie* ineligible for acquiring immigrant status based on his second marriage. While we might hope that something can be done to ameliorate Valdivia's plight (as his second marriage appears to be in good faith), we cannot say in this case that the Board abused its discretion in denying the motion to reconsider.

## IV. Conclusion

For the foregoing reasons, we deny Valdivia's petitions for review of the decisions of the Board of Immigration Appeals.