

Opinions of the United
States Court of Appeals
for the Third Circuit

12-30-2004

# Zayets v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-4398

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Zayets v. Atty Gen USA" (2004). *2004 Decisions.* Paper 28.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/28

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————

No. 03-4398

————

SERGEY ZAYETS

Petitioner

v.

JOHN ASHCROFT,
Attorney General of the United States

————

On Appeal from the United States Department of Justice
Board of Immigration Appeals
(BIA No. A73-054-920)

————

Argued December 6, 2004

Before: AMBRO and VAN ANTWERPEN, Circuit Judges,
and SHADUR, Senior District Judge.*

(Filed: December 30, 2004)

Susanne Peticolas, Esq. (Argued)
Gibbons, Del Deo, Dolan, Griffinger & Vecchione
One Riverfront Plaza
Newark, NJ 07102

Counsel for Petitioner

————

* The Honorable Milton I. Shadur, Senior United States District Judge
for the Northern District of Illinois, sitting by designation.

Peter D. Keisler, Esq.
Assistant Attorney General, Civil Division
Alison Marie Igoe, Esq. (Argued)
Office of Immigration Litigation
United States Department of Justice
P.O. Box 878, Benjamin Franklin Station
Washington, D.C. 20044

Counsel for Respondent

———

OPINION OF THE COURT

———

VAN ANTWERPEN, Circuit Judge.

Petitioner Sergey Zayets seeks review of an October 9, 2003 Board of Immigration Appeals ("BIA") order dismissing his appeal from an immigration judge's ("IJ") decision not to reconsider his motion to reopen his 1999 asylum hearing. In his motion, Petitioner alleged a violation of his Fifth Amendment due process rights flowing from the ineffective assistance of counsel in both the asylum hearing and Petitioner's subsequent untimely attempt to appeal from that hearing. The BIA had jurisdiction over Petitioner's appeal pursuant to 8 C.F.R. § 3.1(b)(3). This Court has jurisdiction over the Board's order dismissing that appeal pursuant to 8 U.S.C. § 1252(a)(1). For the reasons set forth below, we will deny the petition.

I.

Petitioner Sergey Zayets, a citizen of the Ukraine, entered the

2

United States as a non-immigrant visitor on April 9, 1993. When the INS initiated removal proceedings on September 1, 1998, Petitioner filed for asylum, claiming religious persecution. At his hearing, Petitioner testified that he practiced Baptism and that he, his wife, and his brother-in-law had encountered persecution ranging from ridicule to job discrimination to physical attacks. Petitioner identified his persecutors variously as nationalists, communists, local government loyalists, thugs, and members of volunteer and government militias. He testified that all of these groups were essentially the same to him. He also testified to at least two specific attacks that occurred during prayer meetings at his home. Petitioner testified that his wife was hospitalized and suffered a miscarriage due to one attack in 1992 and that his brother-in-law died due to a similar attack in 1993. Petitioner also testified that while Ukranian officials repeatedly denied his requests to leave the Ukraine for the former Czechoslovakia, those officials nonetheless authorized his departure for the United States upon his first request.

Magdalene Scriva, a family friend who testified in support of Petitioner, testified to the fact of Petitioner's wife's hospitalization and miscarriage as well as to the death of Petitioner's brother-in-law. She also testified that Petitioner himself had been hospitalized. However, she was not present at the attacks, and she testified only to

what she had heard from Petitioner, his wife, and their families. Petitioner offered no documents or records to support his testimony, except for a death certificate indicating that his brother-in-law had died as a result of a blow to the chest. Petitioner's wife was not called to testify, nor was any affidavit or other statement from her offered into evidence.

In an oral decision dated August 9, 1999, the IJ denied Petitioner's asylum application. The IJ made an adverse credibility determination, finding that while Petitioner likely practiced Baptism, his remaining testimony was not credible. The IJ found that Petitioner was vague as to the affiliations of his persecutors, that he was unable to support his testimony with documents or records, and that there were material inconsistencies between and among Petitioner's testimony, his asylum papers, and the testimony of Ms. Scriva. The IJ also noted the lack of testimony from Petitioner's wife, finding that her absence contributed to the adverse credibility determination. The IJ further found that the State Department country conditions reports that were introduced into evidence at the hearing also supported the adverse credibility determination.

On the basis of the above record evidence, the IJ found, in addition to making the adverse credibility determination, that Petitioner had not sustained his burden of proof to establish either past

4

persecution or a well-founded fear of future persecution, as set forth in 8 C.F.R. § 1208.13(a) and (b).

We then fast-forward to January 30, 2003, when Petitioner filed a motion with the BIA to reopen his deportation proceedings. In that motion, Petitioner alleged that he had not learned until "early 2002" that his appeal to the BIA from the IJ's original decision had been untimely filed in 1999, and subsequently dismissed in 2001. Petitioner alleged that his former attorney was responsible and that this attorney had further failed to ever notify him of the untimely appeal or of its dismissal. Petitioner further alleged that his attorney had failed to call his wife at the 1999 asylum hearing. Together, Petitioner claimed, these failings of his attorney had prejudiced his case in violation of his Fifth Amendment due process rights.

Lacking jurisdiction to consider Petitioner's motion to reopen, the BIA remanded it to the IJ for consideration, whereupon the IJ denied the motion on May 20, 2003. Subsequently, on July 18, 2003, the IJ also denied Petitioner's motion for reconsideration of the denial to reopen. Then, from that denied motion for reconsideration, Petitioner appealed to the BIA. The BIA dismissed that appeal in an order dated October 9, 2003. Pursuant to Petitioner's petition for review, that order alone is now before this Court.

II.

We review the BIA's dismissal of an appeal from a motion for reconsideration for abuse of discretion, "mindful of the 'broad' deference that the Supreme Court would have us afford." *Xu Yong Lu v. Ashcroft*, 259 F.3d 127, 131 (3d Cir. 2001); *see also INS v. Abudu*, 485 U.S. 94, 110 (1988) ("[T]he reasons for giving deference to agency decisions on petitions for reopening or reconsideration in other administrative contexts apply with even greater force in the INS context."). Moreover, as "[t]he decision to grant or deny a motion to reopen or reconsider is within the discretion of the Board," 8 C.F.R. § 1003.2(a), such "[d]iscretionary decisions of the BIA will not be disturbed unless they are found to be 'arbitrary, irrational or contrary to law.'" *Tipu v. INS*, 20 F.3d 580, 582 (3d Cir. 1994) (quoting *So Chun Chung v. U.S.I.N.S.*), 602 F.2d 608, 612 (3d Cir. 1979).

With the scope of our review limited to the narrow question of whether, in its October 9, 2003 order, the BIA abused its discretion in dismissing Petitioner's appeal from the IJ's denial of his motion for reconsideration, the BIA's conclusions of law are reviewed *de novo*, while its factual determinations are subject only to the highly deferential substantial evidence standard. *See INS v. Elias-Zacharias*, 502 U.S. 478, 483-84 (1992); *Chen Yun Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir. 2002). "[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to

6

conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B) (codifying *Elias-Zacharias*, 502 U.S. at 483-84). That is, "[u]nder the substantial evidence standard, the BIA's findings must be upheld unless the evidence not only supports a contrary conclusion, but compels it." *Abdille v. Ashcroft*, 242 F.3d 477, 483-84 (3d Cir. 2001). Finally, to the extent the BIA interpreted immigration laws or regulations in dismissing Petitioner's appeal, we normally defer to the BIA's interpretations. *INS v. Aguirre-Aguirre*, 526 U.S. 415, 424-25 (1999); *Xu Long Lu v. Ashcroft*, 259 F.3d 127, 131 (3d Cir. 2001).

## III.

The BIA dismissed Petitioner's appeal on one ground, finding Petitioner failed to demonstrate actual prejudice arising from the alleged misconduct of Petitioner's former counsel.[1] The BIA

---

[1] Although not germane to the BIA's decision, Petitioner contends that the doctrine of equitable tolling applies to the 90 day filing requirement set forth in INA § 240(c)(6)(A) (motions to reopen "shall be filed within 90 days of the date of entry of a final administrative order of removal"). *See* 8 U.S.C. § 1229a(c)(6)(C)(i) (2002). Petitioner further contends that his January 30, 2003 motion to reopen was thus timely, notwithstanding that it was filed almost two years after the BIA denied his appeal on March 30, 2001, because he was prevented from filing earlier due to his former counsel's misconduct. We need not resolve the issue as it is not before us in the BIA's order. Even if it were, and even if § 240(c)(6)(A) were subject to equitable tolling, Petitioner could have enjoyed such tolling only through "early 2002," when he learned of his dismissed appeal and the related alleged misconduct of his attorney. Yet Petitioner did not file his motion to reopen until almost a year later, on January 30, 2003. The 90 day limit of § 240(c)(6)(A) plainly expired during this second period of time, as there are no grounds for tolling in this case after early 2002.

7

articulated two reasons for this conclusion. First, the BIA found, there was no prejudice arising from the fact that Petitioner's wife did not testify at his 1999 asylum hearing. According to the BIA, the record did not show attorney misconduct, but rather only a factual dispute between Petitioner and his former attorney as to why Petitioner's wife was not called to testify. Moreover, the BIA found, Petitioner had never subsequently proffered the testimony that his wife would have provided had she been called to testify. Instead, the BIA found, in his motion to reopen Petitioner had only generally asserted, in conclusory fashion, that his wife's testimony would have corroborated his story. Consequently, the BIA concluded, Petitioner had not shown that his attorney had acted improperly, to Petitioner's detriment, at Petitioner's asylum hearing before the IJ in 1999.

Second, the BIA concluded that, even had Petitioner's wife testified, the IJ's decision to deny Petitioner asylum was based on other unrelated and independently sufficient grounds such that the testimony could not have altered the outcome of Petitioner's asylum hearing. In support of this conclusion, the BIA observed the IJ had made an adverse credibility determination against Petitioner not only because of the absence of testimony from his wife, but also because of material inconsistencies between and among Petitioner's testimony, his asylum application, and the testimony of a family friend, Ms.

8

Scriva.  Moreover, the BIA found, the IJ further grounded the adverse credibility determination upon a lack of documentation provided by Petitioner, as well as additional inconsistencies between Petitioner's story and then-existing State Department country condition reports. The BIA determined that these other findings supported an adverse credibility determination regardless of what Petitioner's wife might have said had she testified before the IJ on her husband's behalf.

The BIA turned next to the instances of misconduct by Petitioner's former attorney that allegedly occurred after the conclusion of Petitioner's asylum hearing:  the untimely notice of appeal, the alleged failure to notify Petitioner that his appeal was dismissed as untimely, and the alleged  failure to advise Petitioner of his remaining rights in the wake of that dismissal.  Here, the BIA concluded that, because the outcome of Petitioner's 1999 asylum hearing would not have been different even if Petitioner's wife had testified, Petitioner could not show prejudice arising from his lost opportunity to appeal from that hearing.

In support of this conclusion, the BIA found that the record showed additional factual disputes between Petitioner and his counsel, this time as to why the notice of appeal was untimely filed and as to why Petitioner and his counsel had not communicated after the 1999 hearing.  The BIA also cited to its decision in *In re Assaad*, 23 I.&N.

9

Dec. 553 (BIA 2003), which holds, *inter alia*, that an attorney's failure to file a timely appeal does not constitute *per se* prejudice.

IV.

We discern no abuse of discretion in the BIA's October 9, 2003 order. Turning first to the legal conclusions underlying the order, we find the BIA did not act contrary to law in requiring Petitioner to show that the outcome of his 1999 asylum hearing may have been different had his wife been called to testify. Petitioner concedes this is the appropriate measure of prejudice, citing *Ortiz v. INS*, 179 F.3d 1148, 1153 (9th Cir. 1999) ("Prejudice is found when the performance of counsel is so inadequate that it may have affected the outcome of the proceedings."). This Court recently reiterated this standard. *See Fischetti v. Johnson*, 384 F.3d 140, 155 (3d Cir. 2004) (allegations of ineffective assistance of counsel must show prejudice measured by whether, but for the alleged ineffective assistance, a reasonable probability exists that the outcome of the proceeding would have been different). *See also Sistrunk v. Vaughn*, 96 F.3d 666, 670 (3d Cir. 1996).

Nor did the BIA act contrary to law in determining that its own agency authority, *In re Assaad*, required Petitioner to demonstrate actual prejudice based on the facts of his case. While Petitioner is correct that aliens in deportation proceedings enjoy Fifth Amendment

10

due process protections, the ineffective assistance of counsel in deportation proceedings may constitute a denial of due process only in certain circumstances. *See, e.g., Xu Long Lu*, 259 F.3d at 131. Petitioner does not argue that the BIA's decision in *In re Assaad* is contrary to these principles, nor does he argue that the BIA applied *In re Assaad* to him in error.

The analysis thus turns on whether, based on a review of the administrative record as a whole, the BIA's underlying determinations, set forth above, are supported by substantial evidence. Our review of the record evidence in this case, taken as a whole, shows such substantial evidence is present, as the record does not compel conclusions contrary to the BIA's findings. First, the record evidence does not compel a contrary conclusion with respect to the IJ's adverse credibility determination or his finding that Petitioner had not met his burden in establishing past persecution or a reasonable fear of future persecution. This Court reviews credibility determinations under the same highly deferential substantial evidence standard that we apply to other factual determinations. *Mulanga v. Ashcroft*, 349 F.3d 123, 131 (3d Cir. 2003). Here, the IJ appropriately determined that the record revealed discrepancies among and between Petitioner's testimony, Ms. Scriva's testimony, and Petitioner's asylum papers. These included ambiguities on the question of who

11

perpetrated the alleged acts of persecution suffered by Petitioner and his family. Petitioner identified the perpetrators variously as nationalists, communists, local government loyalists, members of volunteer and government militias, and common thugs. When asked by the IJ to attempt to clarify the likely affiliations of his persecutors in relation to the specific attacks Petitioner had testified to, Petitioner stated that it did not matter to him, as he preferred to use the same names for all of them.

An alien has the burden of proof to establish his or her eligibility for asylum, 8 C.F.R. § 1208.13(a), and must present evidence of persecution that is not only credible, but also specific. *Balasubramanrim v. INS*, 143 F.3d 157, 165 (3d Cir. 1998). While Petitioner's generic references to his attackers might be understandable, they appropriately contributed to the IJ's cogent and specific finding that Petitioner was unable to credibly present his case and carry his burden of proof. *See id.* at 161-62.

The record evidence of the State Department country condition reports provided further substantial evidence to support the adverse credibility determination and the finding that Petitioner had not carried his burden. "Just because [a] State Department report cuts both ways . . . does not mean that it does not constitute substantial evidence" further undermining the credibility of an alien's persecution

12

claim. *Kayembe v. Ashcroft*, 334 F.3d 231, 237 (3d Cir. 2003).

As such, based on the record evidence as a whole, we believe that a reasonable adjudicator would not be compelled to reach contrary conclusions with respect to Petitioner's adverse credibility determination and his failure to demonstrate past persecution or a reasonable fear of future persecution.

Nor does the record evidence compel a contrary conclusion to the BIA's finding that the testimony of Petitioner's wife could not have affected the outcome of Petitioner's 1999 asylum hearing. Petitioner has never proffered, with specifics, what his wife would have said had she been called to testify, and there is substantial evidence in the record, summarized above, supporting the BIA's finding that in this case there were independent shortcomings with Petitioner's case, all unrelated to the absence of his wife's testimony.

In addition to those shortcomings we have already set forth above, we observe Petitioner's failure to provide supporting documents relating to the critical events of his story of persecution that took place as a result of his practice of Baptism: his wife's hospitalization and miscarriage in 1992, his brother-in-law's death in 1993, his own apparent hospitalization (a claim made by Ms. Scriva, but not by Petitioner himself), and Petitioner's alleged attempts to leave the Ukraine for the former Czechoslovakia in order to escape

13

persecution. We have held that the BIA may require even an otherwise credible applicant to submit sufficient corroborating evidence, such as documents and records, if it is "reasonable to expect corroboration." *Abdulai v. Ashcroft*, 239 F.3d 542, 554 (3d Cir. 2001). Here, the record before the IJ already contained substantial evidence to support an adverse credibility determination, and as such it was reasonable for the IJ to therefore require documentary corroboration as to each of the events that comprised the heart of Petitioner's story. It was reasonable to expect such documentation. At least two of the events involved hospitals (and therefore presumably doctor, nurse, and administrative staff records) while another involved official rejections by Ukranian visa officials of Petitioner's formal applications to leave the Ukraine for the former Czechoslovakia. However, Petitioner proffered only one document, the death certificate of his brother-in-law. While the death certificate does not contribute to the adverse credibility finding, as it supports Petitioner's testimony that his brother-in-law died due to a blow to the chest, that document alone cannot compel a contrary conclusion as to the BIA's overall finding.

In sum, taking the evidence in the record as a whole, we are not compelled to reach a conclusion contrary to the BIA's finding that, even had Petitioner's wife testified, the outcome of Petitioner's

14

1999 asylum hearing would have been the same. The same is thus true with respect to the BIA's findings that Petitioner suffered no prejudice during his 1999 hearing or after upon the loss of his opportunity to appeal from that hearing. In reaching this conclusion, we observe the deference we must afford the order before us, given its unique procedural posture. We are also mindful that the only circumstance in which support by substantial evidence will *not* be found is when a reasonable adjudicator "'would be *compelled* to conclude to the contrary'" of the BIA. *Kayembe*, 334 F.3d at 237 (quoting *Chen Yun Gao*, 299 F.3d at 272 (emphasis in original).

We have considered the remaining arguments advanced by the parties and conclude that no further discussion is necessary. The BIA's order of October 9, 2003, being supported by substantial evidence, is not arbitrary, irrational, or contrary to law. Accordingly, for the foregoing reasons, the petition is denied.[2]

_____

[2] Our decision is without prejudice to any attempt by Petitioner to secure habeas jurisdiction in federal district court over his ineffective assistance of counsel claims. *See Chmakov v. Blackman*, 266 F.3d 210 (3d Cir. 2001).