OPINION
PER CURIAM.
Lian Ying Zhang petitions for review of the October 27, 2008 decision of the Board of Immigration Appeals (“BIA”) affirming the Immigration Judge’s (“IJ”) final order of removal. For the reasons that follow, we will deny her petition for review.
*326 Zhang, a native and citizen^ of China, entered the United States without inspection in April 2000. In 2005, when she was pregnant with her second child, Zhang applied for asylum, withholding of removal and relief under the Convention Against Torture (“CAT”), claiming that she feared returning to China because she had a Chinese son (now in his twenties who remained in China) and would soon have a second child in violation of China’s one-child family planning policies.[1] Zhang filed a tome of documents in support of her claim, including birth certificates for her children, Fujian Province Birth Control Regulations and Fujian Province administrative opinions and decisions from 2008 regarding the treatment of foreign-born children for family planning purposes in the cities of Changle and Fuzhou in Fujian Province, numerous articles, affidavits (including the affidavit of demographer Dr. John Aird), transcripts of Congressional testimony, the State Department’s 2002 “Travel Tips,” and the State Department Country Report on Human Rights Practices in China for 2005 (“2005 Country Report”).
Following a hearing, the IJ denied all relief, finding that Zhang failed to demonstrate that she held a well-founded fear of persecution. Specifically, the IJ found that although Zhang had established through testimony, affidavits, and other evidence that she had a genuine subjective fear of persecution upon her return to China, she failed to show that she had an objectively reasonable fear that she would be forcibly sterilized. The IJ noted Zhang’s evidence purporting to show that she would have to register her American-born child in China, including the affidavit of one individual, unknown to Zhang personally, who returned to Fujian Province with two foreign-born children and was forced to undergo sterilization. Relying on the State Department’s Profile of Asylum Claims for China for 2005 (“2005 Profile”), and an opinion letter dated January 7, 2007, from Julieta Vails Noyes, Director of the State Department’s Office of Multilateral and Global Affairs (“2007 Opinion Letter”), the IJ decided that “the matter of whether [Zhang’s] U.S. child will even be counted against her total for family planning purposes is, at best, disputed.” The IJ was unpersuaded that Zhang would be singled out for persecution if she returned to China. The IJ found the affidavits of Zhang’s cousins, attesting that they had been forcibly sterilized after having two children, to be largely irrelevant because these individuals did not have foreign-bom children.
The IJ also found that Zhang failed to show that Fujian Province engaged in a pattern or practice of forced sterilization in cases like her own. The IJ found the bulk of Zhang’s documentary evidence to be unpersuasive because it was outdated, addressed circumstances in a different province, had been discredited (as in the case of the Aird Affidavit), or because it did not tend to show that Fujian Province engaged in mandatory forced sterilization or abortion as opposed to assessing “social compensation fees” against violators of family planning policy. While the IJ acknowledged that the State Department’s 2002 “Travel Tips” document stated that American-born children would be treated as Chinese citizens if their Chinese parents had no immigration status in the United States, she noted that the document did not address specifically whether the children would be “counted” against the parents for family planning purposes. Relying again on the 2005 Profile and the 2007 Opinion Letter, the IJ found that, in any *327 event, the record evidence “pointed to a marked decrease in enforcement of the family planning policy through forced abortion and/or sterilization and does not indicate that there is pattern or practice of sterilizing individuals who return to China after having children in the United States.” (IJ Opinion, JA-15.)[2] The BIA adopted and affirmed the IJ’s decision. Zhang filed this timely petition for review.
We have jurisdiction to review a final order of removal of the BIA under 8 U.S.C. § 1252(a). Abdulai v. Ashcroft, 239 F.3d 542, 547 (3d Cir.2001). “[W]hen the BIA both adopts the findings of the IJ and discusses some of the bases for the IJ’s decision, we have authority to review the decisions of both the IJ and the BIA.” Chen v. Ashcroft, 376 F.3d 215, 222 (3d Cir.2004). We review both decisions under a substantial evidence standard. See Abdille v. Ashcroft, 242 F.3d 477, 483 (3d Cir.2001). Under this deferential standard of review, we will uphold the findings of the BIA “unless the evidence not only supports a contrary conclusion, but compels it.” Id. at 484.
To qualify for asylum, an applicant must demonstrate, among other things, a well-founded fear of persecution based on both a subjectively genuine fear of persecution and an objectively reasonable possibility of persecution. See INS v. Cardoza-Fonseca, 480 U.S. 421, 430-31, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987). To establish eligibility for withholding of removal, an applicant must demonstrate “a clear probability of persecution.” See Fatin v. INS, 12 F.3d 1233, 1238 (3d Cir.1993) (quoting INS v. Stevie, 467 U.S. 407, 430, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1984)).
In her petition for review, Zhang claims that the IJ mischaracterized the evidence, which, Zhang asserts, established that she would be subject to forced sterilization if she returned to China with her American-born child. We disagree. According to the 2005 Profile and the 2007 Opinion Letter upon which the IJ and the BIA relied, birth planning policy in China is established nationally; the enforcement of the policy is left to the provinces and local villages and can vary widely from province to province and from village to village. (See JA-1366; 1410.) The State Department acknowledges that forced sterilization and abortions, which violate national law, continue to be documented.[3] (JA at 1367-68; 1410.) As for enforcement of birth planning policy in Fujian Province, however, although “public and other pressure” may be used to encourage compliance with birth planning laws, United States officials “did not find any cases of physical force employed in connection with abortion or sterilization” in the last ten years. (2005 Profile, JA at 1370; 2007 Opinion Letter, JA at 1410 (“Regarding the alleged existence of an official government policy mandating the sterilization of one partner of couples that have given birth to two children, U.S. officials in China are not aware of such a policy at either the national or provincial level”)). In sum, we conclude that the IJ’s and BIA’s decisions are supported by substantial evidence.
Zhang also protests that the assessment of harsh and exorbitant social compensation fees alone constitutes persecution in her case. The BIA implicitly rejected *328 Zhang’s argument when it concluded that she failed to show a well-founded fear of persecution and affirmed the IJ’s removal order. The BIA has addressed economic sanctions in Fujian Province and has found that, at most, an alien would face “moderate economic impact” not amounting to persecution. In re J-WS-, 24 I. & N. Dec. 185, 191 (BIA 2007); Shao v. Mukasey, 546 F.3d 138, 164 (2d Cir.2008) (finding that the BIA in J-W-S-reasonably concluded that the economic rewards and penalties used to implement the family-planning policy in Fujian Province did not necessarily amount to “physical or mental coercion”). Here, Zhang offered no evidence indicating that Fujian Province would impose more stringent and punitive economic sanctions in her case than the moderate sanctions Fujian Province normally imposes on its residents who violate the family planning policy. The State Department documents on record indicate only that Fujian Province imposes economic sanctions where foreign-born children are registered as permanent residents. (See 2005 Profile, JA at 1374; 2007 Opinion Letter, JA at 1411.)[4] Thus, there is simply nothing in the record that would compel us to conclude that economic sanctions, if any, that Fujian Province might impose on Zhang would be so exorbitant as to amount to persecution. Cf. Li v. Att’y Gen., 400 F.3d 157, 168 (3d Cir.2005) (“[T]he deliberate imposition of severe economic disadvantage which threatens a petitioner’s life or freedom may constitute persecution.”).
Next, Zhang contends that the BIA failed to properly consider the documents she submitted at the immigration hearing in support of her claim.[5] Contrary to her assertion, the BIA “is not required to ‘write an exegesis on every contention. What is required is merely that it consider the issues raised, and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted.’ ” Filja v. Gonzales, 447 F.3d 241, 256 (3d Cir.2006) (quoting Mansour v. INS, 230 F.3d 902, 908 (7th Cir.2000) (internal quotations omitted)). Here, the BIA acknowledged the voluminous record in Zhang’s case and properly concluded that it was insufficient to carry her burden of proof.
Zhang also argues that the BIA failed to remand her case to the IJ to consider several documents that Zhang submitted for the first time on appeal. The BIA declined to consider the additional documents, noting that its review was “limited to the record as was constituted before the Immigration Judge.” See 8 C.F.R. §§ 1003.1 (d)(3)(i) and (iv) (“Except for taking administrative notice of commonly known facts such as current events or the contents of official documents, the Board will not engage in factfinding in the course of deciding appeals.”). We cannot fault the BIA for not considering a remand to the IJ for consideration of the additional *329 documents, as Zhang did not file a motion to remand, and mentioned “remand” only once in her brief before the BIA.[6] See Tipu v. INS, 20 F.3d 580, 582 (3d Cir.1994) (“Discretionary decisions of the BIA will not be disturbed unless they are found to be ‘arbitrary, irrational, or contrary to law.’ ”) (quoting Chun Chung v. INS, 602 F.2d 608, 612 (3d Cir.1979)). Moreover, Zhang has not explained (either before us or to the BIA) why the additional documents she submitted on appeal to the BIA were not previously available or how the evidence, if considered, would change the result in her case. Cf. 8 C.F.R. § 1003.2(c)(1) (“A motion to reopen proceedings shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing.”).
In sum, we cannot say that the evidence compels a conclusion contrary to that of the BIA. See Yu v. Att’y Gen., 513 F.3d 346, 348-49 (holding that State Department Country Reports constituted substantial evidence supporting the BIA’s finding that petitioner’s fear of forced sterilization upon returning to China was not objectively reasonable); Chen, 376 F.3d at 223 (requiring asylum applicant to demonstrate by “credible, direct, and specific evidence an objectively reasonable basis for the claimed fear of persecution”). Accordingly, we will deny the petition for review.

. Zhang gave birth to her daughter, Zoe Chen, in 2006.

. In the opinion, the IJ mistakenly referred to the 2006 Profile of Asylum Claims as "Exhibit 10.”

. In Matter of J-W-S-, 24 I. & N. Dec. 185 (BIA 2007), the BIA discussed at length the State Department’s 2005 and 2006 Profile of Asylum Claims and its 2005 and 2006 Country Reports on China. The 2006 State Department Asylum Claims Profile and Country Report are not in evidence in Zhang's case.

. In Matter of J-W-S-, 24 I. & N. Dec. 185 (BIA 2007), the BIA discussed at length the State Department's 2005 and 2006 Profile of Asylum Claims and its 2005 and 2006 Country Reports on China. The 2006 State Department Asylum Claims Profile and Country Report are not in evidence in Zhang's case.

. Among other evidence she claims the BIA failed to consider, Zhang emphasizes Dr. Aird’s affidavit and accompanying materials. (Petitioner's Brief at 18-20.) In Yu v. Attorney General, 513 F.3d 346, 348-49 (3d Cir.2008), we agreed with the BIA that the State Department’s Profile of Asylum Claims and its Country Report on China, both issued in 2005, tended to cast doubt on the utility of Dr. Aird's frequently-cited affidavit, which provided only generalized statements regarding China’s family planning policies and did not specifically address the issue of couples returning to China with foreign-born children.

. We note that twenty-one of the thirty documents contained in the “new background material” appear to be in the record already. (Compare background-index, JA at 90-97, with indices of documents submitted at the removal hearing, JA at 1662-1665 & 1264-65.)