Michael OJO, Petitioner

v.

**ATTORNEY GENERAL OF the UNITED STATES,** Respondent.

Nos. 07–3391, 08–1496.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) Oct. 1, 2009.

Opinion filed: Oct. 5, 2009.

Rex Chen, Esq., Catholic Charities of the Archdiocese of Newark, Newark, NJ, for Petitioner.

Kevin J. Conway, Esq., Richard M. Evans, Esq., Daniel E. Goldman, Esq., Jocelyn L. Wright, Esq., United States Department of Justice, Office of Immigration Litigation, Washington, DC, for Respondent.

Before: SLOVITER, STAPLETON and COWEN, Circuit Judges.

OPINION

PÈR CURIAM.

In this consolidated appeal, Michael Ojo petitions for review of the following orders entered by the Board of Immigration Appeals ("BIA"): the BIA's July 12, 2007

order affirming the Immigration Judge's ("IJ") decision denying his application for adjustment of status; and the BIA's January 24, 2008 order denying his motion to reopen his removal proceedings. For the following reasons, we will deny the petitions for review.

## I.

Ojo, a native and citizen of Nigeria, came to the United States in 1997 to receive medical care for a cardiac disorder, and stayed longer than permitted. In 2004, he married Wanda Cantrell, a United States citizen. Shortly thereafter, Cantrell filed an I–30 alien relative visa petition in an effort to obtain legal permanent resident status for Ojo, and Ojo initiated proceedings to adjust his status.

In September 2005, Ojo and his wife attended an interview with the United States Citizenship and Immigration Services ("USCIS") in Newark, New Jersey. At the hearing, Cantrell completed an "I–30 Withdrawal" form in which she stated that she wished to rescind the petition she had filed on Ojo's behalf because their marriage was fraudulent; specifically, she stated that she had been "offered a home/place to stay if [her] husband received a green card as a result of [their] marriage." (AR 000154.) Consequently, Ojo's application for adjustment of status was denied, and he was placed in removal proceedings. *See* INA § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B).

A removal hearing took place in November 2005 before IJ Pugliese. At the hearing, Ojo conceded removability but sought adjustment of status based on his marriage to Cantrell. Although Ojo's counsel recognized that Ojo had neither an approved nor pending I–130 visa petition, he explained to IJ Pugliese that he intended to contest USCIS's position that Cantrell had withdrawn her petition. Ojo's counsel also indicated that he intended to have Cantrell file a new I–130 petition. In order to allow counsel an opportunity to take these steps, IJ Pugliese adjourned the hearing. Regarding the withdrawn I–130 petition, the IJ suggested that counsel might be able to "work things out" with the government, but advised him that, regardless, Ojo was required to return to court with "any and all applications next time." (AR 000128.)

Ojo's next hearing took place on March 22, 2006 before IJ Garcy. At the hearing, the government relied on Cantrell's "I–130 Withdrawal" form to demonstrate that the only visa petition that had been filed on Ojo's behalf had been withdrawn. Ojo argued, however, that Cantrell's withdrawal form should not be given legal effect because she had been coerced into signing it. IJ Garcy refused to consider this argument on the ground it lacked jurisdiction to do so.

Ojo then asked IJ Garcy to keep the proceedings open, and to move them to his current residence in Maryland, so that Cantrell could file a second I–30 petition on his behalf. IJ Garcy denied these requests, explaining that Ojo and his wife had already been given several months to file a second I–130 petition, but had inexplicably failed to do so.[1] Accordingly, by order entered March 22, 2006, the IJ denied Ojo's motions for a continuance and a change of venue, and entered a final order of removal.

Ojo appealed IJ Garcy's order to the BIA. Upon review, the BIA found no error in the IJ's decision to deny relief. First,

---

1. During the hearing, Ojo's attorney sought a short recess in order to contact Cantrell so that she could confirm to the court that she did indeed intend to file a second I–130 petition on Ojo's behalf. IJ Garcy granted the request, but counsel was unable to reach Cantrell, who was living in Kentucky at the time.

the BIA agreed with IJ Garcy that, to the extent that Ojo wished to challenge the voluntariness of his wife's decision to withdrawal her I–130 petition, his removal proceedings were not the proper place to do so. The BIA also agreed with IJ Garcy that Ojo had failed to show that he was eligible to adjust his status based on his marriage to Cantrell. Finally, the BIA agreed with IJ Garcy that, because Ojo had failed to show that he was eligible to adjust, there was no reason to grant his motions for a continuance or a change of venue. Therefore, by order entered July 12, 2007, the BIA affirmed IJ Garcy's decision.

In October 2007, Ojo moved to reopen his case on the ground that his wife had submitted a second I–130 visa petition shortly before the BIA issued its July 12, 2007 decision.[2] As a result, Ojo argued, he was thus eligible to adjust his status. The BIA denied the motion because, among other reasons, Ojo had failed to submit a copy of his application for adjustment of status (Form I–485) with his motion to reopen. *See* 8 C.F.R. § 1003.2.

Ojo now petitions for review of the BIA's July 12, 2007, 2007 WL 2299649, and January 24, 2008, 2008 WL 486864 decisions.

## II.

### A. *BIA's July 12, 2007 Decision Denying Application for Adjustment of Status*

[1] Ojo's primary challenge to the BIA's decision denying his application for adjustment of status concerns his contention that Cantrell's "I–130 Withdrawal" form had no legal effect because she had been coerced into signing it. Specifically, Ojo contends that he was denied due process when the IJ precluded him from arguing that the coerced withdrawal was invalid, and that the "I–130 Withdrawal" form was inadmissible because it was obtained through coercion.[3]

IJ Garcy held that Ojo's challenge to the legitimacy of the withdrawal was beyond her jurisdiction. On appeal, the BIA agreed, concluding that Ojo could not raise this argument in the context of his removal proceedings. We agree. Ojo does not cite, nor have we independently discerned, any authority indicating that IJ Garcy had the power to either "deem pending" Cantrell's first I–130 petition or to overturn the USCIS's decision to deny Ojo's application to adjust as a result of the withdrawal.[4]

Next, Ojo claims that, during his November 9, 2005 hearing, IJ Pugliese in-

---

2. Ojo also renewed his motion for a change of venue.

3. We have jurisdiction over Ojo's claims of legal and constitutional error pursuant to 8 U.S.C. § 1252(a)(2)(D).

4. In support of his argument that the BIA should have "deemed pending" Cantrell's first I–130, Ojo relies upon an Illinois District Court decision in a civil action brought against INS under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, in which the court held that it was potentially empowered to declare void an allegedly coerced withdrawal of a visa petition in violation of the plaintiff's constitutional rights. *Boukhris v.*

*Perryman*, 2002 WL 193354 at *2, n. 1 (N.D.Ill. Feb.7, 2002). That case, however, did not arise on a petition for review of a BIA decision, and did not address whether the BIA had jurisdiction to consider the validity of the withdrawal in the context of removal proceedings. In support of his objection to the admissibility of the "I–130 Withdrawal" form, Ojo cites the Supreme Court's decision in *INS v. Lopez–Mendoza*, 468 U.S. 1032, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984), for the proposition that "[e]vidence obtained through coercion is inadmissible." *Lopez–Mendoza* is, however, inapposite, as it pertains to evidence gathered in violation of the Fourth Amendment. *Id.* at 1051, 104 S.Ct. 3479.

formed him that he was not required to file a new I–130 before returning to court for his next hearing because he might be able to renew the initial petition based on his coercion argument. Ojo argues that this is now "the law of the case," and that IJ Garcy improperly penalized him for following IJ Pugliese's advice. Contrary to Ojo's contention, however, the record reveals that IJ Pugliese gave no such advice. Rather, at the November 9, 2005 hearing, Ojo's attorney indicated that he intended to both contest the withdrawal of the original I–130 application, and file a new I–130. In response, IJ Pugliese suggested that counsel might be able to "work things out" with the government on Cantrell's initial I–130 petition, but advised him that, regardless, Ojo was required to return to court with "any and all applications next time."[5] (AR 000128.) Thus, the record does not support Ojo's argument in this regard.

■ Ojo next argues that the BIA's submission of his appeal to a single-member panel was arbitrary and capricious. Pursuant to 8 C.F.R. § 1003.1(e), all appeals are assigned to a single Board member for disposition, "[u]nless a case meets the standards for assignment to a three-member panel under paragraph (e)(6) of this section." Paragraph (e)(6), in turn, provides, *inter alia*, that:

> Cases may only be assigned for review by a three-member panel if the case presents ... [t]he need to establish a precedent construing the meaning of laws, regulations, or procedures; [t]he need to review a decision by an immi-

gration judge ... that is not in conformity with the law or with applicable precedents; [t]he need to resolve a case or controversy of major national import; ... [or t]he need to reverse the decision of an immigration judge....

8 C.F.R. § 1003.1(e)(6).

Here, the BIA dismissed Ojo's appeal because he had failed to establish prima facie eligibility for relief. Therefore, Ojo's case did not meet the criteria for submission to a three-member panel. Accordingly, it was not an abuse of discretion for a single-member panel to review his appeal.[6]

Finally, Ojo claims that the BIA erred by denying his motion for a change of venue, and affirming IJ Garcy's denial of his motion for a change of venue, on the ground that he had not filed a new I–130 petition before seeking to change venue. Ojo argues that this requirement was improper because the Immigration Court Practice Manual does not require any applications or copies of applications to be filed with a change of venue motion. The record reflects, however, that the BIA declined to move the case to Maryland because Ojo had failed to establish prima facie entitlement to the underlying relief, not because filing a new I–130 was a procedural prerequisite for a change of venue motion. Therefore, this argument also fails.

## B. *BIA's January 24, 2008 Decision Denying the Motion to Reopen*

■ We review the BIA's denial of the motion to reopen for abuse of discretion, affording broad deference to the BIA's

---

5. Ojo contends IJ Pugliese was referring to applications "other than ones related to marriage-based adjustment"—such as an application for asylum—when he instructed Ojo to have "any and all applications" ready at the next hearing. (Reply Br. 2–3.) Contrary to Ojo's contention, however, the transcript of the hearing clearly demonstrates that IJ Pugliese adjourned the hearing so that Ojo could

prepare an application for whatever type of relief he sought, whether such application be based on Cantrell's original I–130 petition or another basis for relief. (AR 000128–129.)

6. Furthermore, although Ojo claims that he requested a three-member panel in his notice of appeal, the record does not appear to contain any such request. (AR 00095–99.)

decision. *Ezeagwuna v. Ashcroft,* 325 F.3d 396, 409 (3d Cir.2003). Therefore, in order to obtain relief, Ojo must show that the BIA's decision to deny reopening was arbitrary, irrational, or contrary to law. *See Tipu v. INS,* 20 F.3d 580, 582 (3d Cir.1994).

Upon review, we conclude that the BIA did not abuse its discretion in denying Ojo's motion to reopen. The applicable regulations specify that an alien seeking to reopen proceedings in order to submit an application for relief must submit a copy of "the appropriate application for relief and all supporting documentation." 8 C.F.R. § 1003.2; *see also In re Yewondwosen,* 21 I. & N. Dec. 1025, 1026 (BIA 1997) ("[A] failure to submit an application for relief ... will typically result in the Board's denial of the motion."). Thus, in order to obtain reopening, Ojo was required to submit to the BIA his I–485 application for adjustment of status. The record reflects that he failed to do so. As a result, the BIA did not abuse its discretion in denying relief.[7]

We have reviewed Ojo's remaining arguments and conclude that they are without merit.[8] Therefore, we will deny the petitions for review.[9]

---

7. Ojo argues that the BIA abused its discretion by requiring him to present clear and convincing evidence of the bona fides of his marriage under its decision in *Matter of Velarde–Pacheco,* 23 I. & N. Dec. 253 (BIA 2002). We need not reach this issue because, as noted above, we believe that the BIA acted within its discretion in denying the motion on an alternative basis.

8. Ojo also argues that his removal would violate his rights under the American Declaration of the Rights and Duties of Man, general precepts of international human rights law, and the constitutional prohibition against cru-

el and unusual punishment because he has a serious cardiac condition for which he cannot receive care in Nigeria. Notably, however, Ojo failed to raise these arguments before the BIA. As a result, this court lacks jurisdiction to review them. *See* 8 U.S.C. § 1252(d)(1) (exhaustion of administrative remedies is mandatory and jurisdictional); *Bonhometre v. Gonzales,* 414 F.3d 442, 447 (3d Cir.2005).

9. The Motion to Supplement the Record on Appeal and the Second Motion to Supplement the Record on Appeal and Urgent Request for an Expedited Decision are denied.