NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-2492
_____

BENI TAN; KIEM KARTADJAJA,
Petitioners

v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent
_____

On Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(BIA 1:A96-263-181 and BIA 1:A96-263-180)
Immigration Judge: Honorable Miriam Mills
_____

Submitted Under Third Circuit LAR 34.1(a)
April 14, 2011

Before: FISHER, JORDAN and COWEN, *Circuit Judges*.

(Filed April 18, 2011 )
_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Beni Tan and Kiem Kartadjaja ("Petitioners") petition for review of a decision of the Board of Immigration Appeals ("BIA") denying their motion to reopen their removal proceedings. The BIA's decision was based on Petitioners' failure to introduce evidence that had not previously been available and on their failure to establish a prima facie case for the relief they sought. For the following reasons, we will deny the petition.

## I.     Background

Petitioners are citizens of Indonesia who are married to each other and who entered the United States in November 2000 as nonimmigrant visitors. At the time they entered, they had two sons, nine-year-old Joshua and seven-year-old Jeremy, who reportedly joined them in the United States in 2004.

Petitioners applied for asylum and withholding of removal in March 2003, based upon their identity as ethnic Chinese Christians and their alleged fear of persecution if they were forced to return to Indonesia. The Department of Homeland Security filed Notices to Appear ("NTAs") charging both with removability. In October 2004, Petitioners, represented by counsel, appeared before an Immigration Judge ("IJ"), admitted the allegations in the NTAs, and conceded that they were removable. However, each of them requested withholding of removal and relief under the Convention Against Torture ("CAT"). After an evidentiary hearing, the IJ issued a decision finding that the asylum applications were untimely and that Petitioners had failed to carry their evidentiary burden for withholding of removal and CAT eligibility. They appealed to the BIA, and, on December 27, 2005, the BIA affirmed the IJ's decision without opinion. Petitioners did not seek review of that decision.

2

On March 27, 2006, based on evidence they characterize as new and which they assert, in addition to their identity as ethnic Chinese Christians, demonstrates a probability of persecution if they were forced to return to Indonesia, Petitioners filed a motion to reopen the BIA's December 2005 decision. That purportedly newly-discovered evidence relates to their son Joshua, who was born deaf. Since coming to the United States, Joshua has been able to attend the Archbishop Ryan School for Deaf Children, where he has learned sign language that allows him, for the first time, to communicate with his parents and teachers regarding his experiences in Indonesia. Petitioners argue that Joshua's disability will lead to the family being persecuted in Indonesia and that they could not have presented this evidence in October 2004 because Joshua could not yet communicate his experiences.

Kartadjaja provided an affidavit indicating that her family was treated "differently" because of Joshua's disability and that "it is considered very shameful to have a disabled child" in Indonesia. (App. at 9-10.) Further, Joshua would not have the same educational opportunities in Indonesia but, rather, would face what Petitioners describe as "sub human treatment." Petitioners also presented two news articles dating from 2003 and 2004 as evidence of the difficulties and discrimination experienced by disabled people in Indonesia. Additionally, a letter from the Archbishop Ryan School describing Joshua's experiences in the classroom and the improvement in his communication was attached to the motion. An affidavit from Dr. Jeffrey A. Winters, an Associate Professor at Northwestern University's Department of Political Science and a specialist in Indonesian affairs, was also attached and described discrimination against

Chinese Christians in Indonesia. Petitioners stressed that their son's disability was a factor that, in addition to their Chinese and Christian identity, would result in persecution if they were repatriated.

In April 2006, the BIA denied the motion. First, the BIA found that Petitioners failed to establish that the evidence of deaf-related discrimination was not available and could not have been discovered and presented at the first hearing. Second, the BIA concluded that, "while the proffered evidence may indicate that those with disabilities face discrimination and a lack of governmental support in Indonesia, it does not detail treatment that would rise to the level of persecution." (*Id*. at 3.) Evidently referring to the Petitioners' assertion that their ethnicity and religion will cause them to be persecuted, the BIA said that Petitioners did not "otherwise establish a prima facie case for the relief sought." (*Id.*) The present petition for review followed.

## II.     Discussion[1]

There are three grounds upon which the BIA may deny a motion to reopen immigration proceedings. First, it may be denied when the movant fails to establish a prima facie case for the relief sought. *INS v. Abudu*, 485 U.S. 94, 104 (1988). Second, it may be denied when the movant fails to introduce previously-unavailable and material evidence. *Abudu*, 485 U.S. at 104; *see also* 8 C.F.R. § 1003.2(c). Finally, when the ultimate relief sought is discretionary, as with asylum or withholding of removal, "the BIA may leap ahead, as it were, over … threshold concerns … and simply determine that

_____

[1] The BIA had jurisdiction to review the motion to reopen based upon 8 C.F.R. § 1003.2(a). This Court exercises jurisdiction pursuant to 8 U.S.C. § 1252.

4

even if they were met, the movant would not be entitled to the discretionary grant of relief." *Abudu*, 485 U.S. at 105. Denials under any of those three grounds are reviewed for abuse of discretion. *Id.*; *Sevoian v. Ashcroft*, 290 F.3d 166, 174 (3d Cir. 2002). Accordingly, the BIA's dismissal of a motion to reopen will be reversed only if it is "arbitrary, irrational or contrary to law." *Tipu v. INS*, 20 F.3d 580, 582 (3d Cir. 1994) (quotation marks omitted).

We note at the outset that "[m]otions to reopen immigration proceedings are disfavored," *INS v. Doherty*, 502 U.S. 314, 323 (1992), and that "[g]ranting such motions too freely will permit endless delay of deportation by aliens creative and fertile enough to continuously produce new and material facts sufficient to establish a prima facie case." *Abudu*, 485 U.S. at 108 (citation omitted).

Assuming that Petitioners' evidence regarding the poor treatment of the deaf in Indonesia, including their son, was previously unavailable and material to their claim,[2] we nevertheless conclude that the BIA did not abuse its discretion in holding that the Petitioners failed to establish a prima facie case for the relief sought. To qualify for withholding of removal, an alien must identify with and be a member of a particular social group and show that he or she will be persecuted based on that membership. *Fatin*

---

[2] The information Joshua can now impart was certainly unavailable before he acquired signing skills, but that does not explain why information about discrimination against the disabled generally and against the Petitioners' family specifically was not previously provided in the immigration proceedings. Ms. Kartadjaja says in her affidavit that "People treated our whole family differently when they realized that Joshua was deaf," and, "Disabilities are taboo in Indonesia[.]" (App. 9.) That was information was available before Joshua could break his silence and yet was not provided to the IJ.

5

*v. INS*, 12 F.3d 1233, 1238 (3d Cir. 1993). We accept for purposes of argument that Joshua's deafness qualifies him as a member of a social group, the disabled. And we further accept that the Petitioners' status as Chinese Christians places them in a particular social group. Still, an alien seeking withholding of removal must demonstrate a clear probability of persecution based on membership in the group. The alien has the burden to show that it is more likely than not that his or her "life or freedom would be threatened in th[e] country [of removal]." 8 U.S.C. § 1231(b)(3)(A); *Fatin*, 12 F.3d at 1238. Persecution "does not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional." *Fatin*, 12 F.3d at 1240. Rather, it "denotes extreme conduct." *Id.* at 1240 n.10.[3] Similarly, to establish CAT eligibility, the party must "establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c).

Here, while the record suggests that disabled people and ethnic Chinese Christians may face discrimination and a lack of governmental support in Indonesia, the BIA did not abuse its discretion in holding that the record fails to show probable persecution or torture and thus fails to establish a prima facie case for relief. Petitioners argue that the BIA failed to consider discrimination against the disabled in concert with the treatment they may encounter based on their ethnic Chinese Christian identity, but the BIA, while needing to give "reasoned consideration to the petition," need not "parse or refute on the

---

[3] To interpret "persecution" more liberally would qualify a significant portion of the world's population for asylum, a result we have noted is unlikely to have been intended by Congress. *Fatin*, 12 F.3d at 1240.

record each individual argument … offered by the petitioner." *Zheng v. Att'y Gen. of the U.S.*, 549 F.3d 260, 268 (3d Cir. 2008). The BIA's decision evinces reasoned consideration. While Joshua's plight in particular is moving, we cannot say that the record here indicates that the BIA abused its discretion in denying the motion to reopen.

## III.    Conclusion

For the foregoing reasons, we will deny the petition.